**VICTOR HOTEL CORP., Cardozo Hotel Corp., Senator Hotel Corp., Carlyle Hotel Corp. and The Royale Group, Ltd., Plaintiffs–Counterclaim Defendants–Appellants,**

v.

**FCA MORTGAGE CORP., Defendant–Counterclaim Plaintiff–Appellee.**

**COMMONWEALTH LAND TITLE INSURANCE COMPANY, Defendant,**

v.

**ART DECO HOTEL CORP., et al., Counterclaim Defendant.**

**Ocean Properties of Delaware, Deco Management Service Corp. and Global Financial Corp., Counterclaim Defendants–Appellants.**

No. 90–5124.

United States Court of Appeals, Eleventh Circuit.

April 17, 1991.

Rehearing Denied June 5, 1991.

---

Barry Richard, Tallahassee, Fla., for Victor Hotel, Cardozo Hotel, Senator Hotel, Carlyle Hotel and the Royale Group.

Richard & Richard, Dennis Alan Richard, Miami, Fla., for Ocean, Global and Deco.

William C. Crenshaw, Valdes–Fauli, Cobb, Petrey & Bischoff, P.A., Miami, Fla., for FCA Mortg.

Before HATCHETT and EDMONDSON, Circuit Judges, and PECKHAM\*, Senior District Judge.

HATCHETT, Circuit Judge:

In this case, we examine the scope of the doctrine enunciated in *D'Oench, Duhme and Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and affirm the district court concluding that *D'Oench* and its progeny effectively bar the claims and defenses presented.

## FACTS

In June, 1984, FCA Mortgage Corporation (FCA) agreed to make a $13,500,000 mortgage loan to Victor Hotel Corporation, Cardozo Hotel Corporation, Senator Hotel Corporation, and Carlyle Hotel Corporation, all subsidiaries of Art Deco Hotel Corporation (Hotel Corporations) to refinance and renovate six hotels in Miami's Art Deco district. The parties memorialized the agreement in writing, and FCA issued a promissory note for $13,500,000, secured by a lien on mortgages of the hotels.

In January, 1985, Hotel Corporations advised FCA that the original amount of the loan was insufficient to complete the renovation of the hotels. Consequently, Hotel Corporations requested an additional $2,200,000. FCA issued a second promissory note for $2,200,000 and executed a supplemental loan agreement with Hotel Corporations which increased the principal amount of the loan to $15,700,000.

In September, 1985, FCA further agreed to increase the principal amount of the loan by $1,419,861, for a total of $17,119,861. FCA secured the loan by placing a second lien on the mortgages of the hotels. Hotel Corporations agreed to repay the loan principal and interest in monthly installments. FCA thereafter breached the September 1985 agreement and refused to fund the additional advance.

Following the breach, Hotel Corporations filed suit against FCA in federal district court. In an oral ruling, the district court found in Hotel Corporations' favor requiring FCA to fund the $1,419,861 commitment. The district court also appointed a receiver to oversee the continuation of the hotel renovations.

On September 1, 1986, prior to the district court's entry of a written final judgment, Hotel Corporations and FCA entered into a settlement agreement which increased the loan principal by $11,781,000. According to the agreement, the increase in the loan principal was to complete renovations on the original six hotels and to pay certain taxes, insurance, and other expenses related to the hotels' operations. The settlement agreement also modified the existing loans and created a valid and enforceable indebtedness to FCA without defense, claim, or setoff in the principal sum of $16,554,073.28. Additionally, FCA earmarked funds from the increased principal to pay certain expenses of Hotel Corporations' parent corporation, the Royale Group, Ltd.

In September, 1986, at about the time of the settlement agreement, FCA informed Hotel Corporations that the value of the hotel renovation was too low in relation to the amount of the loan. Accordingly, Hotel Corporations presented FCA with a proposal for restructuring the project. The proposal included the acquisition of several new properties for renovation and an increase in the loan principal. FCA considered the restructuring plan as is evident from the following internal memorandum to the senior loan committee of FCA's parent corporation, American Savings and Loan Association. The memorandum states:

> The Committee should note, however, that if this request (to reallocate funds) is granted, the borrowers will be requesting additional funds in the near future. If the borrowers proceed with the plans they presented last week, future requests will propose increasing our loan

---

\* Honorable Robert F. Peckham, Senior U.S. District Judge for the Northern District of California, sitting by designation.

by an amount estimated to be $17,865,000.

This document was the only indication that FCA considered future loans to complete the project.

FCA later advised Hotel Corporations that it did not have the authority to approve additional increases to the loan. FCA agreed, however, to reallocate the existing loan proceeds by permitting Hotel Corporations to use a portion of the proceeds to purchase additional properties.

Relying on the reallocation agreement and the possibility of a future loan, Hotel Corporations began buying new properties. In December, 1986, Hotel Corporations entered into a "First Amendment" to the restated loan agreement in which FCA reallocated $379,000 of the then existing loan proceeds to purchase the Flambeau Apartments. In late December, 1986, FCA entered into a "Second Amendment" to the restated loan agreement which provided for the reallocation of $409,912 of the existing loan proceeds for down payment and other expenses in acquiring Tides Hotel and Helen's Molnar Apartments.

In May, 1987, FCA and Hotel Corporations entered into a "Third Amendment" to the restated loan agreement in which FCA reallocated $545,505 of the existing loan proceeds to purchase Splendor Apartments and to pay certain expenses in connection with acquiring the Flambeau Apartments. As Hotel Corporations acquired each new property, FCA expanded the existing loan proceeds to include the property. Nonetheless, FCA and Hotel Corporations did not have an express written agreement endorsed by FCA's board of directors or loan committee stating that FCA would guarantee further loans to Hotel Corporations. Furthermore, each amendment to the September, 1986, settlement agreement contains the following language:

*No commitment.* Borrowers acknowledge and agree that lender has no commitment or other obligation of any nature with respect to the Additional Property, the renovation or demolition of any improvements thereon, or the construction of new improvements thereon, and except as set forth in the loan agreement, as modified thereby, lender has no commitment or other obligation of any nature relating to Borrowers, Guarantors, or any affiliate of either, for any purpose whatsoever.

Following the May, 1987, third amendment to the loan agreement, FCA informed Hotel Corporations that it did not intend to go forward with the expanded project and would not increase the amount of the loan. This announcement left Hotel Corporations with a shortage of funds with which to complete the original six hotels because most of the existing loan proceeds had been reallocated to purchase additional properties. Due to the lack of funds, Hotel Corporations, which before the denial of the loan increase had failed to complete the Senator and Victor Hotels, now had to delay completion on two of the original six hotels. Thus, in December, 1987, FCA advised Hotel Corporations that it considered the restated loan agreement to be in default.

## PROCEDURAL HISTORY

In April, 1988, FCA filed a motion to accelerate Hotel Corporations' debt and foreclose on the mortgages securing the debt. In May, 1988, FCA filed a counterclaim and a motion for summary judgment seeking foreclosure of the mortgages on the seven hotels and three apartment buildings, intangible personal property pertaining to the hotel and apartment buildings, money judgment based upon a guaranty and various promissory notes executed by the Royale Group, Ltd., and the appointment of a receiver. In September, 1988, Hotel Corporations filed a complaint against FCA alleging breach of contract, restitution, and fraudulent inducement.

Prior to September 5, 1988, FCA was a wholly-owned subsidiary of American Savings and Loan Association. On September 5th, the Federal Home Loan Bank Board appointed the Federal Savings and Loan Insurance Corporation (FSLIC) as receiver for American Savings and Loan Association ("Old American"). As receiver, FSLIC absorbed Old American, succeeding to its

rights, titles, powers and privileges and those of its officers, directors, and members. 12 C.F.R. § 457.7 (1988). FSLIC then transferred all of its right, title, and interest in substantially all of Old American's assets, including the FCA stocks, to American Savings, a federal savings and loan association ("New American").

Additionally, FSLIC–Receiver executed an assistance agreement ("first assistance agreement") which provided two basic forms of financial assistance to New American in connection with its acquisition of FCA and Old American's other assets: (1) initial capital in the amount of $248,000,000 and (2) reimbursements for New American's losses on "covered assets." Losses incurred in connection with FCA would in fact be a loss on covered assets triggering FSLIC–Corporate's responsibility under the first assistance agreement. The first assistance agreement terminated when New American's assets were sold in December, 1988. As part of the sale, American Savings Bank acquired some of New American's assets while New West Savings and Loan Association (New West) acquired FCA. FSLIC executed a "second assistance agreement" with New West obligating FSLIC–Corporate to subsidize all net losses incurred in connection with New West and FCA.

Following the formation of New American, FCA filed a second motion for summary judgment in the district court stating that the doctrine enunciated in *D'Oench, Duhme and Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) barred Hotel Corporations' claims for breach of contract, restitution, and fraudulent inducement. The district court granted FCA's motion for summary judgment.

## CONTENTIONS

Hotel Corporations contend that the district court erred in granting FCA's motion for summary judgment because neither the *D'Oench* doctrine nor its statutory counterpart, 12 U.S.C. § 1823(e), bars Hotel Corporations' claims and defenses against FCA. In response, FCA contends that the district court correctly granted summary judgment on the basis of *D'Oench* and its progeny.

## ISSUES

Hotel Corporations seek consideration of the following issues: (1) whether the *D'Oench* doctrine effectively bars its claims for breach of contract, restitution, and fraudulent inducement; and (2) whether the district court erred in extending the *D'Oench* doctrine to FCA, a subsidiary of a federally-insured banking institution.

## DISCUSSION

In reviewing the district court grant of a motion for summary judgment, we apply the same legal standards applied by the district court. *Clemons v. Dougherty County, GA.*, 684 F.2d 1365 (11th Cir.1982). Federal Rule of Civil Procedure 56(c) permits a summary judgment when the pleadings along with appropriate affidavits establish "no genuine issue as to material facts and the moving party is entitled to judgment as a matter of law." *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 320, 106 S.Ct. 2548, 2551, 91 L.Ed.2d 265 (1986).

The district court found no dispute of material facts precluding foreclosure under Florida law after determining that the *D'Oench* doctrine barred Hotel Corporations' claims. Hotel Corporations contend that neither *D'Oench* nor its statutory counterpart, 12 U.S.C. § 1823(e), bars its claims because FSLIC had actual knowledge of the existence of Hotel Corporations' claims and defenses prior to acquiring FCA's assets.

In *D'Oench*, the Supreme Court held as a matter of federal common law that the Federal Deposit Insurance Corporation (FDIC) could assert the defense of estoppel to bar a party's claim based on an alleged agreement which does not appear in the bank's records. *D'Oench*, 315 U.S. at 461, 62 S.Ct. at 681. The Court reasoned that by preventing a party from suing on an agreement not within the bank's records, a "secret agreement," FDIC could properly rely on the bank's records to regulate and protect the fiscal stability of the institution. *D'Oench*, 315 U.S. at 457, 62 S.Ct. at 679.

Such reliance is particularly important in deciding whether to execute a Purchase and Assumption agreement. *Gunter v. Hutcheson*, 674 F.2d 862 (11th Cir.1982).

Congress later codified *D'Oench* as applied to the FDIC in 12 U.S.C. § 1823(e) which states in pertinent part:

No agreement which tends to diminish or defeat the interest of the Corporation [FDIC] in any asset acquired by it under this section . . . shall be valid against the corporation unless such agreement (1) is in writing, (2) was executed by the depository institution and any person claiming an adverse interest thereunder, (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee meeting, and (4) has been, continuously, from the time of its execution, an official record of the depository institution.

In *Langley v. FDIC*, 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987), the Supreme Court interpreted section 1823(e) to bar suits against the FDIC when the borrower's defense is not based strictly on a secret agreement with the bank, but on the bank's misrepresentation or warranty. The Court further held in *Langley* that under section 1823(e), it was irrelevant whether the FDIC had knowledge of the bank's misrepresentation prior to acquiring the note through receivership, or whether the bank's representation or warranty was made to fraudulently induce the borrowers into executing the note. *Langley*, 484 U.S. at 94–95, 108 S.Ct. at 402–03.

■ Both *D'Oench* and *Langley* have been applied to immunize the FSLIC against defenses such as fraudulent inducement and misrepresentation. *See FSLIC v. Lafayette Inv. Properties, Inc.*, 855 F.2d 196, 198 (5th Cir.1988); *FSLIC v. Two Rivers Association, Inc.*, 880 F.2d 1267 (11th Cir.1989). In *Two Rivers*, we analyzed the FSLIC and found that it had parallel duties and powers with respect to savings and loans as the FDIC has with banks. Thus,

we concluded that FSLIC could avail itself of defenses available to the FDIC.[1] *Two Rivers*, 880 F.2d at 1275. Nonetheless, Hotel Corporations argue that *D'Oench* is available only to the FDIC and not to the FSLIC. Moreover, Hotel Corporations argue that *D'Oench* is inapplicable when the FSLIC is acting as a receiver rather than in its corporate capacity. Both of these arguments were considered and summarily rejected in *Two Rivers*, 880 F.2d at 1274.

■ Additionally, Hotel Corporations argue that *D'Oench* and section 1823(e) are inapplicable to this case because the FSLIC had knowledge of Hotel Corporations' claims and defenses prior to acquiring FCA's assets. In *Langley*, the Supreme Court stated that the FDIC's knowledge of a bank's misrepresentation prior to acquiring the bank's note is irrelevant in deciding whether section 1823(e) barred any claims against the FDIC. *Langley*, 484 U.S. at 94–95, 108 S.Ct. at 402–03. Furthermore, two panels of this court have stated that the FSLIC's knowledge of an unrecorded agreement or scheme prior to its acquisition of a note is irrelevant. *FDIC v. McCullough*, 911 F.2d 593, 600 n. 5 (11th Cir.1990); *Two Rivers Association*, 880 F.2d at 1275 n. 2. In *McCullough*, this court noted that innocent borrowers who cannot be said to have lent themselves to arrangements that might deceive banking authorities could bring a claim of fraud in fact. *McCullough*, 911 F.2d at 600 n. 6 (citing *FDIC v. Meo*, 505 F.2d 790, 793 (9th Cir.1974)). Hotel Corporations do not fall within this exception as they were fully aware that no written agreement with FCA regarding future loans existed.

■ Finally, Hotel Corporations argue that FCA "essentially" agreed to future fundings when it decided to reallocate loan funds originally earmarked to renovate the six hotels. Yet, Hotel Corporations never entered into a written agreement obligating FCA to provide future funding for the hotel renovations. The only bank records regarding any future loans to Hotel Corpo-

---

**1.** Since this appeal was docketed, the FSLIC has been abolished by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), and the FDIC has been substituted in place of the FSLIC. This substitution has no bearing upon our analysis of the issues.

rations is the memorandum to Old American's senior loan committee which simply presented Hotel Corporations' request. Thus, Hotel Corporations' claim of breach of contract must fail because no documentary evidence supported a reasonable inference that FCA breached an agreement to disburse funds committed under the original loan agreement and its amendments. Additionally, both *D'Oench* and section 1823(e), as interpreted in *Langley*, bar Hotel Corporations' claims for restitution and fraudulent inducement. Therefore, the district court correctly found no genuine issue of material fact and correctly granted FCA's motion for summary judgment.

We turn next to the issue of whether *D'Oench* applies to FCA, a subsidiary of a federally insured banking institution. Hotel Corporations along with appellants Global Financial Corporation, Ocean Properties of Delaware, Inc., and Deco Management Services Corporation contend that although *D'Oench* has been extended to FSLIC, FSLIC was not a party to this action and the defenses asserted would not diminish any present or past right, title, or interest of FSLIC in FCA's loan agreement with Hotel Corporations. The district court allowed FCA to use the *D'Oench* doctrine as a bar to Hotel Corporations' claims after finding that a successor in interest of FSLIC is entitled to immunity under *D'Oench*.

We find no error with the district court's ruling, which is in accord with the precedent of this court. In *FDIC v. Hoover-Morris Enterprises*, 642 F.2d 785 (5th Cir. 1981), the court extended the defenses available under *D'Oench* and section 1823(e) to bar affirmative claims against a wholly-owned subsidiary of a failed institution.[2] The *Hoover-Morris* court further stated that the *D'Oench* doctrine is "all encompassing," and applies to any agreement that "tends to defeat or diminish [FSLIC's] right to an interest" in receivership. 642 F.2d at 787. Thus, the actual parties to the loan agreement is irrelevant in determining the applicability of *D'Oench*. See *People ex rel. Hartigan v. Commonwealth Mortgage Corp. of America*, 723 F.Supp. 1258 (N.D.Ill.1989) (plaintiff concedes that defendant's status as a subsidiary rather than entity taken over by FSLIC does not affect relevance of *D'Oench*). FCA came within the scope of *D'Oench* once FSLIC became receiver of Old American and acquired all of Old American's assets including FCA and the loan in question.

Additionally, *D'Oench* applies to FCA due to the FSLIC's extensive involvement during the Purchase and Assumption agreement with New American. After acquiring FCA and its loan portfolio from Old American, FSLIC-Receiver transferred these assets to New American, a successor in interest to FSLIC. The agreement with New American obligated FSLIC-Corporate to provide $248,000,000 in cash and reimburse New American for losses on "covered assets." FCA and its loan commitment are included among the covered assets. No dispute exists as to whether *D'Oench*'s protection extends to successors in interest to the FSLIC. See *Porras v. Petroplex Savings Association*, 903 F.2d 379, 381 (5th Cir.1990).

Moreover, a holding that *D'Oench* is inapplicable to FCA in this case would seriously undermine FSLIC's policy consideration. The FSLIC has to rely on a financial institution's written records and its assets, such as wholly-owned subsidiaries, to determine solvency for regulatory purposes. Such reliance is of particular importance when FSLIC-Receiver values a failed institution's claims and persuades a solvent bank to assume the deposit accounts of the failed institution. *Gunter v. Hutcheson*, 674 F.2d 862, 870 (11th Cir.1982). *D'Oench* and section 1823 prevent secret agreements between a subsidiary of a failed institution and a borrower from interfering with FSLIC's regulating duties. Consequently, the district court correctly extended *D'Oench* and section 1823(e) to bar Hotel Corporations' claims against FCA.

**2.** Our en banc court adopted the precedent of the Fifth Circuit, as that court existed on September 30, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981).

## CONCLUSION

We hold that the *D'Oench* doctrine applies in this case regardless of whether FSLIC was aware of Hotel Corporations' claims and defenses prior to acquiring FCA's assets. Additionally, we hold that *D'Oench* applies to subsidiaries of federally insured banking institutions. Accordingly, the judgment of the district court is affirmed.

AFFIRMED.