**John V. SANTOPADRE, et al.**

v.

**PELICAN HOMESTEAD AND SAVINGS ASS'N.**

Civ. A. No. 89–4340.

United States District Court,
E.D. Louisiana.

Jan. 14, 1992.

Douglas Scott Draper, Friend, Wilson & Draper, New Orleans, La., for plaintiffs.

Jack Anthony Ricci, Robert John Skinner, Judy Lynn Burnthorn, Daryl George Glorioso, Baldwin & Haspel, New Orleans, La., and Monica T. Surprenant, Baldwin & Haspel, Metairie, La., for defendant.

## ORDER AND REASONS

CHARLES SCHWARTZ, Jr., District Judge.

This matter is before the Court on defendant, Pelican Homestead and Savings Association's ("Pelican") Motion for Summary Judgment. On November 27, 1991, the motion was heard and, following the submission of proposed findings by the parties on December 9, 1991, was taken under submission by the Court.

## FACTUAL BACKGROUND

On August 9, 1990, this Court dismissed the plaintiffs' Complaint, enforced Settlement Agreements dated May 22, 1986 and July 3, 1986, and held that the Santopadres retained no ownership interest in the Avenue Plaza property.[1] *Santopadre v. Pelican Homestead and Sav. Ass'n*, 741 F.Supp. 1252 (E.D.La.1990) (*"Santopadre I"*). On October 30, 1990, this Court enjoined the petitory action with respect to the same property which the plaintiffs had filed in state court.[2] *Santopadre v. Pelican Homestead and Sav. Ass'n*, 749 F.Supp. 124 (E.D.La.1990) (*"Santopadre II"*). On May 31, 1991, Pelican moved for an order declaring that it had satisfied all of its obligations under the judgments and the Settlement Agreements; however, because the matters were on appeal this Court did not grant the order. On August 7, 1991, the Fifth Circuit Court of Appeals affirmed both of this Court's judgments. *Santopadre v. Pelican Homestead and Sav. Ass'n*, 937 F.2d 268 (5th Cir.1991) (*"Santopadre 5th"*).

1. Additionally, the *lis pendens* filed in connection with Civil District Court action 86–18600 was ordered canceled.

2. Additionally, the *lis pendens* filed in connection with this lawsuit, Civil District Court action 90–17541 was ordered canceled.

3. The two state court actions were: (1) Club La Pension, Inc. v. Pelican Homestead and Savings

On September 25, 1991, this Court heard Pelican's motion for an order of satisfaction of judgment. The parties then proceeded to Pelican's main office for the purpose of transferring the funds necessary to confect the May 22, 1986 Settlement Agreement. However, before the Court ruled on the motion, Pelican discovered that on September 20, 1991 two new lawsuits and new *lis pendens* against the Avenue Plaza property had been filed in the Civil District Court for the Parish of Orleans by Club La Pension, Inc. and Gibraltar Acceptance Corporation arising from alleged obligations which were included in and encompassed by the May 22 and July 3, 1986 Settlement Agreements.[3] On October 8, 1991, Pelican moved this Court to enforce its 1990 restraining order by ordering the dismissal of these two new 1991 state court suits and cancellation of the corresponding *lis pendens;* however, prior to the hearing on the motion, plaintiffs voluntarily dismissed with prejudice these suits and corresponding *lis pendens* and Pelican's motion was dismissed as moot. On October 10, 1991, this Court entered its order that Pelican's obligations were "fully and completely" satisfied with the sole exception of "any and all rights which may exist pursuant to any recorded agreements in the Mortgage and Conveyance Office of the Parish of Orleans affecting the subject property, solely with regard to the Eurovita Health Spa and/or of the timeshare owners."[4]

On November 12, 1991, Pelican filed the instant motion that this Court adjudicate all outstanding claims of the Santopadres and thus terminate all litigation between the parties. Specifically, Pelican requests the Court to:

1. Dismiss, with prejudice, the claims against Pelican in these proceedings which are the same as those heretofore men-

Association, Civil Action No. 91–17679 ("the Club" action) and (2) Gibraltar Acceptance Corporation v. Pelican Homestead and Savings Association, Civil Action No. 91–17680 ("the GAC" action) (collectively "the 1991 actions").

4. *Order,* at 3 (October 10, 1991).

tioned and set forth in the two state court suits filed in Civil District Court for the Parish of Orleans on September 20, 1991, i.e., the Club and the GAC actions;[5]

2. By mandatory injunction, order the plaintiffs to dismiss, with prejudice, Civil District Court actions 86–18600 and 90–5199;[6] and

3. Include these four actions with the October 19, 1990 injunction prohibiting re-litigation by the plaintiffs, their attorneys, agents or employees.[7]

## THE LAW

### A.  The Club La Pension ("Club") Action[8]

#### 1.  *Public Records Doctrine*

■  The claims in the Club action were for access to the Avenue Plaza Eurovita Spa for its members and timeshare owners. This Court's August 1990 judgment held that the ownership of the Avenue Plaza property became vested in Gulf Federal Savings Bank ("GFSB") as of July 1986.[9] On October 23, 1986, GFSB transferred

ownership of the Avenue Plaza property to Avenue Plaza Apartments Company, Inc. ("Avenue, Inc.").[10]  Thus, the only rights with respect to the Avenue Plaza property which were retained by either the Santopadres and/or their assignees and which may be enforced by third persons, in accordance with the Louisiana public records doctrine, are those recorded in the public records of the Parish of Orleans.  *McDuffie v. Walker*, 125 La. 152, 51 So. 100 (1909);  *Owen v. Owen*, 336 So.2d 782, 788–89 (La.1976);  *Voelkel v. Harrison*, 572 So.2d 724, 726 (La.App. 4th Cir.1990),  *writ denied*, 575 So.2d 391 (La.1991).

The only reference to the spa access contained the public records is an attachment to the May 1986 Settlement Agreement. While this agreement indicates that an exhibit labeled Exhibit "A" listing the current vendor contracts of Avenue Plaza, along with the contracts themselves, were to be attached to the agreement, no such documents were ever attached nor was there ever an exhibit to the agreement labeled

---

**5.**  *See supra* footnote 3.

**6.**  Two actions in the Civil District Court for the Parish of Orleans, Nos. 86–18600 ("the 1986 action") and 90–5199 ("the 1990 action"), brought by the Santopadres with respect to the Avenue Plaza remain pending on the docket of said court.  Had this Court been apprised of the existence of these actions when Pelican moved to have the 1991 actions dismissed, an order would have issued at that time requiring their dismissal.

The claims asserted in the 1986 action, which are based on the Settlement Agreements, have already been litigated before this Court and the *lis pendens* in connection with the lawsuit has been canceled.  *Santopadre I,* at 1254.  The 1990 action is also based upon the same Settlement Agreements already litigated in this Court and the language contained in the petition is identical to the complaint filed herein except for four inconsequential differences.  The differences are:  (1) Paragraphs 2 and 3 regarding jurisdiction and venue in the federal complaint were deleted from the 1990 action; (2) The 1990 action alleges that "Mmahat ... owned approximately an 80% interest in the law firm of Mmahat and Duffy ("MD").  Mmahat served as GSFB's general legal counsel."  The 1990 action at ¶ 7.  The federal suit alleges that "Mmahat ... owned approximately an 60% interest in the law firm Mmahat, Duffy, Opotowsky & Walker ("MDOW") which served as GSFB's general legal counsel.";  (3) The 1990 action does not contain

the substance of paragraphs 66–70 of the federal suit which attempts to state the legal elements of a RICO cause of action;  and (4) The prayer in the 1990 action requests a judgment "jointly, severally, and *in solido* in an amount deemed reasonable by this Court."  The federal suit prayer requests a judgment in the amount of $20,000,000 trebled.

The Santopadres agree that these two Civil District Court actions "must be dismissed."  Proposed Findings of Fact and Conclusions of Law, at p. 6–7.

**7.**  Although Pelican's attorneys are being cautious, it is unnecessary for this Court to include the 1991 actions within the injunction prohibiting relitigation because they were dismissed with prejudice by the plaintiffs.

**8.**  *See supra* footnote 3 and accompanying text.

**9.**  Before July 1986, ownership of the Avenue Plaza property was in Avenue Plaza Apartments Company ("Avenue Company").  The Settlement Agreements transferred all of the Santopadres' interest in Avenue Company to GFSB and its wholly owned subsidiary Gulf Capital Resources Corporation ("GCRC").  The interest which GCRC held in the Avenue Plaza property was transferred to GFSB in October 23, 1986.

**10.**  Defendant's Exhibit 5, *Act of Exchange* (between GFSB and Avenue, Inc.).

Exhibit "A." However, an unlabeled exhibit to the May 22, 1986 Agreement lists 82 items, number 48 providing "Spa Use (Avenue Plaza & La Pension)." [11]

Louisiana jurisprudence has not established precise criteria to determine what description in the public records is sufficient to place third persons on notice, and such determination is to be made on a case by case basis. *Voelkel,* 572 So.2d at 727; *Watterson v. Magee,* 498 So.2d 30, 32 (La.App. 1 Cir.1986). Even giving the Santopadres the benefit of the doubt that the aforesaid unlabeled document is Exhibit "A," it is the *only* recorded reference to the plaintiffs' spa access claim. The Court holds that this language standing alone, is insufficient to give third parties reviewing the public records notice that Club members or timeshare owners have rights of access to the Eurovita Spa in the Avenue Plaza property; thus, it can neither transfer rights nor create any obligations in favor of alleged Club members with respect to the Avenue Plaza property and specifically the Eurovita Spa. Simply stated, Pelican, owner of Avenue, Inc., has no obligation to give Club members access to the Eurovita Spa.

It is further alleged that the spa access arises from an April 7, 1986 agreement between Avenue Company and Mr. Santopadre. However, it is undisputed that this agreement is not recorded in the public records of Orleans Parish. Defendant's Exhibit 4, *Affidavit of Dawn Mouledoux* (abstractor who searched the appropriate records). Also, on April 7, 1986 the Club did not even have corporate existence.

Specifically, the first sentence of the agreement states that plaintiffs, Mr. and Mrs. Santopadre, were doing business as a partnership called La Pension. Further, the Club was not a party to the Settlement Agreements of May and July 1986; rather, the agreements were executed by Mr. Santopadre acting individually and for Avenue Company. The Fifth Circuit has held in this case that "[b]y cancelling the *lis pendens,* the district court effectively ruled that *Pelican owns the Avenue Plaza property, free and clear of all claims by the Santopadres." Santopadre 5th,* at 274. Thus, the Santopadres cannot claim rights in the Avenue Plaza property based on the April 7, 1986 agreement.

### 2. D'Oench, Duhme Doctrine

Even if what is contained in the public records were construed to be sufficient to preserve rights in the Avenue Plaza property,[12] it is the April 1986 Agreement [13] that creates the spa access claim. Moreover, plaintiffs' claims are, in any event, barred by the *D'Oench, Duhme* doctrine which precludes reference to documents and materials which are not part of the bank's records.[14] On November 21, 1986, GFSB was placed into a receivership through which the Avenue Plaza property was acquired by Gulf Federal Savings & Loan ("GFSL"). It is undisputed that the April 1986 Avenue Company agreement sought to be enforced against Pelican was neither a part of the official records of GFSB nor a part of the official records of Avenue, Inc.[15] The *D'Oench, Duhme* doc-

---

**11.** This is the full text of number 48. *See* May 22, 1986 Settlement Agreement, at p. 9.

**12.** This Court previously held in the preceding section of this Order and Reasons that the *only* recorded reference to plaintiffs' spa access claim, standing alone as it does, is insufficient to place third parties on notice regarding Club members/time share owners alleged rights respecting spa access/use.

**13.** As previously mentioned in the preceding section of this Order and Reasons, it is undisputed that the April 1986 Agreement appears nowhere in the public records.

**14.** According to the Fifth Circuit's pronouncement in *Bowen v. Federal Deposit Ins. Corp.,* 915

F.2d 1013, 1016 (5th Cir.1990), the FDIC is not required "to retain linguists and cryptologists to tease out the meaning of facially unencumbered notes" or "spreadsheet experts ... historians, soothsayers, and spiritualists in a Lewis Carroll-like search for a bank's unrecorded liabilities."

**15.** Defendant's Exhibit 6, *Affidavit of Paul Lassalle,* at ¶ 7 (Presently a Vice–President of Pelican and previously Vice–President of GFSB and a Senior Vice–President of GFSL). The absence of a genuine dispute over this issue makes it unnecessary for this Court to rule whether it is the official records of Avenue, Inc., GFSB, or both, which are relevant to the applicability of the *D'Oench, Duhme* doctrine.

trine bars the assertion of any claims or defenses against the FDIC, arising from an agreement which is not part of the records of the bank taken over by the FDIC. *D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) (*codified at* 12 U.S.C. § 1823(e)). The doctrine has been expanded to protect assignees of the FDIC, including, bridge banks, *Bell & Murphy & Assoc., Inc. v. Interfirst Bank Gateway*, 894 F.2d 750, 754–55 (5th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990), subsidiaries, *Victor Hotel Corp. v. FCA Mortgage Corp.*, 928 F.2d 1077, 1083 (11th Cir.1991); *Federal Deposit Ins. Corp. v. Hoover–Morris Enterprises*, 642 F.2d 785, 787–88 (5th Cir. Unit B 1981), and private institutions, *Federal Sav. and Loan Ins. Corp. v. Cribbs*, 918 F.2d 557, 560 (5th Cir.1990); *Porras v. Petroplex Sav. Ass'n*, 903 F.2d 379, 381 (5th Cir.1990), acquiring insolvent institutions' assets from claims and defenses which are related to the acquired asset. Therefore, the April 1986 Agreement cannot be enforced against Pelican (i.e., an assignee of the FDIC) by either the Santopadres or the Club.

**B. The Gibraltar Acceptance Corporation ("GAC") Action [16]**

█ During the time the Santopadres controlled the Avenue Plaza, leases for interval weeks occupancy in the facility were sold by them and their general partnership Avenue Company. Promissory notes given in payment for the interval week occupancy leases executed by the lessees, and which were sold to GAC by the Santopadres and their general partnership Avenue Company, have now gone into default. GAC now contends that the July 1986 Agreement

preserves to the holder of the promissory notes rights to resell the interval weeks leases in the event of default by the makers of the notes.[17] GAC now seeks access to the Avenue Plaza property for its timeshare salespersons for the purpose of reselling these interval lease units to new purchasers.

Pelican alleges that the resale of the interval weeks at issue violates the Louisiana Timesharing Act ("the Act"). La.Rev.Stat.Ann. §§ 9:1131.1–.30 (West 1991). Thus, Pelican contends that GAC's claim violates a Louisiana rule of public order [18] and is unenforceable. *Jones v. Chevalier*, 579 So.2d 1217, 1218 (La.App. 3rd Cir.1991); *See Wynne v. New Orleans Clerks and Checkers Union*, 550 So.2d 1352, 1354–55 (La.App. 4th Cir.1989), *writ. denied*, 558 So.2d 1125 (La.1990); La.Civ.Code Ann. art. 2030 (West 1985).

The Act provides that a property is made subject to a timeshare plan by the recordation of a timeshare declaration in the conveyance records of the parish in which the timeshare property is located. La.Rev.Stat.Ann. §§ 9:1131.2(17), 1131.4(B) (West 1991). No timeshare declaration for the Avenue Plaza was filed in the conveyance records of the Parish of Orleans by the Santopadres or their partnership Avenue Company.[19] Thus, the interval lease units sought to be resold are not validly created timeshare intervals.

Additionally, when the Santopadres transferred their ownership of Avenue Plaza to GFSB, the timeshare offering statement for Avenue Plaza filed with the Louisiana Real Estate Commission contained material inaccuracies.[20] For example, the offering statement inaccurately reflected the following: (1) athletic facilities at the

---

**16.** *See supra* footnote 3 and accompanying text.

**17.** July 1986 Agreement, ¶ 3.

**18.** "The Louisiana Time Sharing Act is enacted to protect the public welfare. No person shall solicit any waiver of its provisions which protect the purchaser. Any waiver of its provisions shall be without effect." La.Rev.Stat.Ann. § 9:1131.29 (West 1991). Allowing the resale of interval weeks would subvert the aforementioned purpose of the Act.

**19.** Defendant's Exhibit 6, *Affidavit of Paul Lassalle*, at ¶ 2. This has not been disputed by the plaintiffs.

**20.** Prior to the initial sale, the public offering statement is required to be given to purchasers of timeshare interests. La.Rev.Stat.Ann. § 9:1131.10(A)(1) (West 1991).

River Center Health Club located at the Hilton Hotel rather than at the Avenue Plaza; and (2) a timeshare exchange program with "International," which prior to 1986 had been substituted by membership in another timeshare exchange program. Further, neither the Avenue Plaza, nor any of its salespersons, were bonded in accordance with the requirements of La.Rev.Stat. Ann. § 37:1437.1(E) (West Supp.1991).[21]

The Santopadres do not contest the failure to file a timeshare declaration in the conveyance records of the Parish of Orleans. Further, the Santopadres do not address the specific violations of the Act in their opposition;[22] rather, plaintiffs' countervailing affidavits merely allege general denials in the form of legal conclusions.[23] "[U]nsupported ... affidavits setting forth 'ultimate or conclusionary facts and conclusions of law' are insufficient to ... defeat a motion for summary judgment." *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir.1985) (citing C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil 2d* § 2738 (1983)). Moreover, the facts which are not in dispute[24] demonstrate that the resale of the interval weeks would violate the Act and thus a Louisiana rule of public order and thus cannot be enforced. Accordingly,

IT IS HEREBY ORDERED that Pelican's Motion for Summary Judgment is GRANTED and the claims herein of Club La Pension and Gibraltar Acceptance Corporation are DISMISSED with prejudice and at plaintiffs' costs.

IT IS FURTHER ORDERED that plaintiffs, forthwith and without delay, dismiss Civil District Court Action Nos. 86–18600 and 90–5199 with prejudice and to pay all costs necessary to effectuate the dismissals.

IT IS FURTHER ORDERED that John V. Santopadre, Sr., Lorraine Aucoin Santopadre, Avenue Plaza Apartments Company, their corporations, business entities, anyone acting on their behalf, and all of their attorneys, agents or employees are permanently enjoined from making any claims to ownership of the Avenue Plaza property, and in this regard, from filing any lawsuits against Pelican or its subsidiary Avenue Plaza Apartment Company, Inc. or taking any steps in prosecution of Civil District Court Action Nos. 86–18600 (the 1986 action), and 90–5199 (the 1990 action), including the filing of a Notice of Lis Pendens, and representing to anyone in a manner that could create a cloud on the title of the Avenue Plaza property, other than by appeal of this order, that they have any ownership interest in the Avenue Plaza property.

The Clerk of Court is ordered to enter judgment in accordance herewith.

---

**21.** Defendant's Supplemental Exhibit 1, *File of Louisiana Real Estate Commission.* Although plaintiffs' contend that the exhibit was filed without leave of court, on November 26, 1991 this Court ordered the exhibit filed in the record.

**22.** Plaintiffs contend that the receipt of defendants' supplemental exhibit one day prior to the hearing deprived them of an opportunity to investigate and answer the allegations them. However, the supplemental exhibit merely provides further evidence to support defendant's allegations already set forth in its memorandum in support of summary judgment. Therefore, the supplemental exhibit did not deprive plaintiffs of an opportunity to respond to defendants' specific allegations.

**23.** For example, Mr. Santopadre states that he "he filed a public offering statement" and

"[t]hat, to the best of his knowledge and ability, this statement was complete and accurate." Plaintiff's Exhibit 1, *Affidavit of John V. Santopadre, Sr.,* at ¶ 1–2.

**24.** Herein, the Court recapitulates the undisputed facts with respect to plaintiffs' failure to comply with the Act, to wit: (1) plaintiffs failed to file a timeshare declaration for Avenue Plaza in the conveyance records of Orleans Parish; (2) upon transfer of ownership of Avenue Plaza to GSFB, plaintiffs timeshare offering statements for Avenue Plaza filed with the Louisiana Real Estate Commission contained factual inaccuracies; and (3) plaintiffs failed to bond both Avenue Plaza and its salespersons in accordance with the requirements of La.Rev.Stat.Ann. § 37:1437.1(E).