United States Court of Appeals,

Eleventh Circuit.

No. 95-4893.

FIRST UNION NATIONAL BANK OF FLORIDA, a national banking association, Plaintiff-Counter-Defendant-Third-Party-Plaintiff-Appellee,

v.

M. Lewis HALL, Jr., Defendant-Counter-Claimant-Appellant,

Federal Deposit Insurance Corporation, Third-Party Defendant-Appellee.

Sept. 23, 1997.

Appeal from the United States District Court for the Southern District of Florida. (No. 93-1725-CIV-DTKH), Daniel T.K. Hurley, Judge.

Before TJOFLAT and BLACK, Circuit Judges, and REAVLEY[*], Senior Circuit Judge.

TJOFLAT, Circuit Judge:

This case arises out of an effort by appellee First Union National Bank to enforce a note against its maker, appellant M. Lewis Hall. We address two issues here: (1) whether the district court's initial order to remand the case to state court deprived it of jurisdiction to reconsider that order and to hear the merits of this case, and (2) whether the district court erred in granting summary judgment in favor of First Union on the ground that Hall's defense against enforcement of the note was barred by the *D'Oench, Duhme* doctrine. We conclude that the district court did have jurisdiction to decide the case and that summary judgment was proper. We therefore affirm.

I.

On September 20, 1991, First Union entered into an agreement with the Federal Deposit Insurance Corporation (the "FDIC"), pursuant to which First Union purchased many of the assets of Southeast Bank, N.A, which had been declared insolvent by the Comptroller of the Currency the previous day. As part of this transaction, the FDIC agreed partially to indemnify First Union for any

---

[*]Honorable Thomas M. Reavley, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

liability it might incur as a result of claims asserted against it as successor to the Southeast assets that First Union purchased.

Among the Southeast assets that First Union purchased was a note in the amount of $5,048,779.00 signed by Hall. This note was in default, and First Union filed suit against Hall in Florida state court to enforce it. Hall's answer asserted, *inter alia,* that Southeast had agreed to limit its remedies in the event of default, and that the failure of Southeast and First Union to limit their remedies in accordance with that agreement excused his non-payment of the note. First Union contended that this argument was barred by the *D'Oench, Duhme* doctrine,[1] which prohibits the enforcement of alleged "side agreements" that diminish the interests of the FDIC or its successors in assets acquired from failed banks, unless that agreement is clearly set forth in the loan documents.

First Union then impled the FDIC, citing the FDIC's agreement partially to indemnify First Union. The FDIC removed the case to the District Court for the Southern District of Florida, pursuant to its statutory authority.[2] Hall moved the district court to remand the entire case to state court, or, in the alternative, to retain jurisdiction only over First Union's indemnification claim against the FDIC (the "FDIC-First Union claim") and remand the claims between Hall and First Union (the "First Union-Hall" claims). The district court initially decided to follow the latter course and issued an order remanding the First Union-Hall claims and staying the FDIC-First Union claim pending the state court's resolution of the First Union-Hall claims. The FDIC and First Union moved the court to reconsider its remand order, and the court decided to reverse course; it vacated the remand order and retained jurisdiction over the entire case.

The district court decided most of the issues involved in this case on motions to dismiss or motions for summary judgment. Relevant to this appeal, the district court granted summary judgment in favor of First Union on the question of whether *D'Oench, Duhme* and section 1823 barred Hall's counterclaim regarding the alleged "side agreement." The sole remaining issue at trial

---

[1] *See D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942).

[2] *See* 12 U.S.C. § 1819(b)(2)(B) (1994).

2

was the amount of Hall's liability.  After a short bench trial, the district court entered judgment in favor of First Union in the amount of $10,006,923.79.

Hall now appeals, asserting, *inter alia,* two claims of error.[3]  First, Hall argues that the district court's initial remand order divested it of jurisdiction to reconsider its decision to remand, and thus also divested it of jurisdiction to decide this case on the merits.  Second, Hall argues that summary judgment on the *D'Oench, Duhme* issue was inappropriate because he had presented facts sufficient to raise a material question of fact as to whether *D'Oench, Duhme* barred his claim.

II.

A.

In order to decide whether a remand order is reviewable, we look to the terms of the remand order itself and determine whether the district court remanded on the ground that removal to federal court was "improvident and without jurisdiction."  *See Thermtron Prods., Inc. v. Hermansdorfer,* 423 U.S. 336, 346, 96 S.Ct. 584, 590, 46 L.Ed.2d 542 (1976);  *In re Merrimack Mut. Fire Ins.,* 587 F.2d 642, 648 (5th Cir.1978).[4]  We then apply the law on the basis of that determination.  The issue, then, is one of law, which we review *de novo.*

B.

Hall's first claim is that 28 U.S.C. § 1447(d) deprived the district court of jurisdiction to reconsider its decision to remand a portion of the case before it.  Section 1447(d) states that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise."[5]  This nonreviewability extends to the power of a district court to reconsider its own

---

[3]In addition to the claimed errors discussed in the text, Hall also argues that the FDIC removal statute, 12 U.S.C. § 1819, did not give the district court jurisdiction over the case, and that First Union was required to exhaust its administrative remedies against the FDIC before impleading the FDIC. We find these arguments to be without merit.

[4]In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[5]This section provides one exception, for certain civil rights actions, which is clearly inapplicable here.  *See* 28 U.S.C. §§ 1443, 1447(d) (1994).

3

remand order. *See Harris v. Blue Cross/Blue Shield of Alabama, Inc.,* 951 F.2d 325, 329-30 (11th Cir.1992). ("Section 1447(d) not only forecloses appellate review, but also bars reconsideration ... by the district court of its own remand order"(citations omitted)); *see also In re Shell Oil* 631 F.2d 1156, 1158 (5th Cir. Unit A 1980) (noting that where section 1447(d) does not bar review "a district court has jurisdiction to review its own order, and vacate or reinstate that order."). Section 1447(d), however, applies only to cases remanded, pursuant to 28 U.S.C. § 1447(c), for lack of subject matter jurisdiction or defects in the removal procedure. *See Thermtron,* 423 U.S. at 346, 96 S.Ct. at 590 ("[O]nly remand orders issued under section 1447(c) and invoking the grounds therein that removal was improvident and without jurisdiction are immune from review under section 1447(d)."). Remand orders issued on other grounds are fully reviewable, and the district court is free to reconsider those remand orders. *See id.; In re Shell Oil,* 631 F.2d at 1157-58. Hall argues that the district court remanded the First Union-Hall claims on the ground that it lacked subject matter jurisdiction; thus, he argues, the remand was pursuant to section 1447(c) and was unreviewable under section 1447(d).

This argument ignores the plain terms of the district court's remand order. The district court began its discussion by noting that the FDIC removal statute, 12 U.S.C. § 1819(b)(2)(B), conferred subject matter jurisdiction over the indemnification claim involving the FDIC, stating that "[s]ection 1819 creates a presumption of federal jurisdiction whenever the FDIC is a party to a suit" and concluding that the "removal of [First Union's] suit was proper." The district court went on to observe that under its supplemental jurisdiction, it could exercise its discretion to hear the First Union-Hall claims.[6] The district court declined to exercise this jurisdiction and remanded those claims because it believed that retaining jurisdiction over them would not serve the interests of "judicial economy, convenience, and fairness." At no point did the court state that it lacked subject matter jurisdiction and nowhere did it cite section 1447(c). The court clearly stated that it believed it had supplemental jurisdiction to hear the First Union-Hall claims under section 1367, if it

---

[6]*See* 28 U.S.C. § 1367 (1994).

4

exercised its discretion to do so. We therefore find that the district court based its remand order on its decision not to exercise its discretion to hear a supplemental claim, and not pursuant to section 1447(c).

The FDIC removal statute, 12 U.S.C. § 1819, also provides that the FDIC "may appeal any order of remand entered by any United States district court." 12 U.S.C. § 1819(b)(2)(C). We have held that, in cases to which the FDIC is a party, this section establishes an independent exception to the general rule of nonreviewability of remand orders contained in § 1447(d). *See FDIC v. S & I 85-1, Ltd.,* 22 F.3d 1070, 1072 (11th Cir.1994); *Lazuka v. FDIC,* 931 F.2d 1530, 1536 n. 3 (11th Cir.1991) (holding that § 1819 "specifically departs from [§ 1447] by allowing FDIC to appeal any order of remand"). Where such an exception applies, "a district court has jurisdiction to review its own order, and vacate or reinstate that order." *In re Shell Oil Co.,* 631 F.2d at 1158 (5th Cir.1980).

The district court's remand order was not, then, unreviewable under section 1447(d). The district court was free to reconsider its decision, and thereafter to resolve the claims involving Hall and First Union on the merits. Thus, Hall's first argument fails.[7]

III.

A.

We review a district court's grant of summary judgment *de novo. See Forbus v. Sears Roebuck & Co.,* 30 F.3d 1402, 1404 (11th Cir.1994), *cert. denied,* 513 U.S. 1113, 115 S.Ct. 906, 130

---

[7]Hall's brief on appeal states that "from the moment of removal to this day, Hall has consistently argued that removal was improper and the federal court lacked jurisdiction." Appellant's Brief at 23. This statement is flatly refuted by the record. In his "Response to the Motions of First Union and the FDIC for Reconsideration of Order Granting in Part Hall's Motion to Remand and Order Staying Case," Hall argued that "while the FDIC properly removed the action to the Federal Court, the Supplemental Jurisdiction of the Court permitted the Court, in the exercise of its discretionary authority, to remand [the First Union-Hall] claims." Record, vol. 4, No. 76, at 2. Hall stated that "this case appears to be precisely one of the kind contemplated by Congress in enacting 28 U.S.C. § 1367 and 12 U.S.C. § 1819 to allow the federal courts discretion in the exercise of supplemental jurisdiction," *id.,* and that the lower court "correctly looked to its supplemental jurisdiction and found that supplemental jurisdiction is discretionary." *Id.* at 3. Hall's earlier position cannot be taken as a waiver and bar to his position on appeal because arguments regarding subject matter jurisdiction cannot be waived. *See* Fed.R.Civ.P. 12(h)(3). It is, however, an indication that Hall's argument on appeal finds no support in the language of the remand order.

L.Ed.2d 788 (1995). In order to survive summary judgment, the nonmoving party must submit evidence sufficient to create a material issue of fact as to each element of its claim. *See Real Estate Fin. v. Resolution Trust Corp.,* 950 F.2d 1540, 1543 (11th Cir.1992).

B.

Hall argues that the district court erred in granting First Union's motion for summary judgment on the question whether the *D'Oench, Duhme* doctrine bars Hall's claim that Southeast had agreed to limit its remedies in the event of Hall's default. In *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), the Supreme Court held that the FDIC's interest in an asset it acquired from a failed bank could not be diminished by alleged "agreements" not disclosed in the failed bank's records. *D'Oench, Duhme* and its progeny enable the FDIC, and banks that acquire insolvent banks' assets from the FDIC,[8] to make quick and accurate appraisals of the value of insolvent banks' assets by protecting the FDIC and its transferees against undisclosed agreements that would unexpectedly diminish the value of those assets.[9]

---

[8]The *D'Oench, Duhme* doctrine has been expanded to protect entities to whom the FDIC, acting in its capacity as receiver of failed banks, has transferred assets formerly belonging to a failed bank. *See Victor Hotel Corp. v. FCA Mortgage Corp.,* 928 F.2d 1077, 1083 (11th Cir.1991). In *Victor Hotel,* we held that the *D'Oench, Duhme* doctrine barred a debtor from asserting claims and defenses against a wholly-owned subsidiary of a failed thrift, which subsidiary had been wholly transferred to a second thrift by the Federal Savings and Loan Insurance Corporation (FSLIC). We found no error in the district court's holding that the second thrift, as successor-in-interest to FSLIC, was also protected by the doctrine. *See id.*

[9]The *D'Oench, Duhme* doctrine has been codified at 12 U.S.C. § 1823(e)(1), which provides:

> No agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it under this section or section 1821 of this title, ... shall be valid against the [FDIC] unless such agreement—
>
> (A) is in writing,
>
> (B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
>
> (C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

6

Hall initially contends that First Union, as the FDIC's transferee, is not protected by the *D'Oench, Duhme* doctrine because that doctrine has been preempted by Congress' passage of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101-73, 103 Stat. 183. Our recent decision in *Motorcity of Jacksonville, Ltd. v. Southeast Bank N.A.,* 83 F.3d 1317, *vacated sub. nom. Hess v. FDIC,* --- U.S. ----, 117 S.Ct. 760, 136 L.Ed.2d 708 (1997), *reinstated,* 120 F.3d 1140 (11th Cir.1997), squarely rejects that argument. Accordingly, we will not belabor the issue here.

In the alternative, Hall contends that a letter, handwritten by him and sent to Southeast Bank *prior to* the execution of the note, establishes a side agreement between himself and Southeast whereby Southeast would limit its remedies in case of default. Hall argues that this "letter agreement" satisfies the requirements of the *D'Oench, Duhme* doctrine, and can thus be asserted against First Union.[10] Specifically for purposes of this appeal, Hall argues that he presented evidence sufficient to establish that Southeast executed the agreement, as is required by the *D'Oench, Duhme* doctrine, and that the district court erred when it found otherwise and entered summary judgment.

The *D'Oench, Duhme* doctrine provides that

---

> (D) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e)(1). A "side" agreement must meet each of the requirements of this section in order to be asserted against the FDIC. We dispose of Hall's appeal solely on the basis of the common-law *D'Oench, Duhme* doctrine and therefore do not reach the issue, raised by Hall, whether First Union as successor-in-interest to the FDIC is protected by § 1823(e), as it is by the common-law *D'Oench, Duhme* doctrine.

[10]Technically, Hall argues only that the letter satisfies the requirements of 12 U.S.C. § 1823(e), and does not argue that the letter satisfies the requirements of the common-law *D'Oench, Duhme* doctrine. As Hall correctly notes, however, the two sources of law operate "in tandem," at least with regard to their core requirements, *see Twin Constr. v. Boca Raton, Inc.,* 925 F.2d 378, 382 (11th Cir.1991), and our conclusion that Hall has failed to satisfy the requirements of the common-law doctrine—which is the sole ground for our holding on the *D'Oench, Duhme* issue in this case—necessarily implies that he has also failed to meet the requirements of § 1823(e). As noted *supra,* however, we do not reach the issue whether § 1823(e) actually *applies* in this case to protect First Union as the FDIC's transferee.

> [i]n a suit over the enforcement of an agreement originally executed between an insured depository institution and a private party, a private party may not enforce against a federal deposit insurer any obligation not specifically memorialized in a written document such that the agency would be aware of the obligation when conducting an examination of the institution's records.

*Baumann v. Savers Fed. Sav. & Loan Ass'n,* 934 F.2d 1506, 1515 (11th Cir.1991), *cert. denied,* 504 U.S. 908, 112 S.Ct. 1936, 118 L.Ed.2d 543 (1992). A banking agency would not normally be aware of any obligation contained in any written document that purports to be an agreement between the failed bank and the borrower unless that document is executed—that is, signed—by the failed bank. *See Twin Constr., Inc. v. Boca Raton, Inc.,* 925 F.2d 378, 383-84 (11th Cir.1991). To "sign" is to make a mark "with the present intent to authenticate" whatever is signed. *See* UCC § 1-201 (1977). Hall presents three pieces of evidence in support of his argument that Southeast signed the letter agreement. First, Hall points to a yellow "post-it" note that was affixed to his letter and that contained the notation "Place in doc. file," followed by the handwritten name of C.L. Harrison, an officer of Southeast. Second, Hall offers an "Inventory of Loan Documents"—a standard form listing the contents of a loan file—that was found in his loan file. This form indicated the documents included in the file and contained Harrison's handwritten name in a space marked "First Approval." Finally, Hall presents an affidavit in which Harrison states that he, Harrison, believed that Southeast was bound by the terms of the "letter agreement."

We conclude that this evidence does not create a material issue of fact as to whether Southeast signed the "letter agreement." First, the yellow "post-it" note does not indicate a "present intent to authenticate" the letter as a binding agreement. Rather, it is a mere notation to bank personnel, directing them to file the letter in Hall's bank file. Hall has not explained why Harrison did not sign the letter itself, and we cannot read this "post-it" note instruction alone as an expression of "a present intent to authenticate" the letter as an agreement.

Second, Harrison's handwritten name on the "Loan Inventory" does not indicate an intention to authenticate the "letter agreement." A examination of this pre-printed form indicates that a wide range of documents might be included in any particular loan file. Among these are appraisals and

8

surveys of property, personal financial statements of the borrower, and resolutions of the board of directors authorizing certain corporate actions. The signature line marked "First Approval" simply cannot indicate an intention to authenticate each of these various documents.[11]

Finally, Harrison's affidavit stating that he believed that Southeast was bound by the terms of the letter does not change the result here. Harrison does not state that his intent in affixing the "post-it" note or in signing the "Inventory of Loan Documents" was to authenticate the letter agreement and to bind the bank to its terms. Even if we interpreted his statement in such a way, Hall could not rely upon Harrison's statement to support his argument that Southeast "signed" the letter agreement.

We have noted elsewhere that the *D'Oench, Duhme* doctrine is much more restrictive than ordinary contract interpretation, and that it flatly prohibits parol evidence, such as Harrison's affidavit. *Twin Constr.,* 925 F.2d at 384; *see also FDIC v. Merchants Nat'l Bank of Mobile,* 725 F.2d 634, 639-40 (11th Cir.1984) (declining to consider "the circumstances surrounding [a failed bank's] acquisition of" an asset). In *Twin Construction,* a borrower sought to present parol evidence that the bank had agreed to the terms set forth in an unsigned document found in the bank records. We found that inquiries into the validity of unsigned agreements—inquiries which must necessarily be based on parol evidence—are not permitted by the *D'Oench, Duhme* doctrine. *See Twin Constr.,* 925 F.2d at 384. We noted that this conclusion comported with the policy purposes of the doctrine: "an unsigned document makes it very difficult for bank examiners ... to determine whether the banking authority will be bound," *id.,* and an unsigned document presents "no clear evidence that

_____

[11]This conclusion is informed by the recognition that the various documents in such a file may well contradict one another. Here, for instance, Hall's purported "letter agreement," which ostensibly requires Southeast (and thus First Union as assignee) to foreclose on a mortgage held as security on the note before proceeding against Hall personally, is flatly contradicted by the mortgage that Hall *subsequently* wrote in favor of Southeast. That mortgage authorizes Southeast to "enforce payment of all sums secured hereby by action at law or by suit in equity to foreclose this mortgage, either or both, concurrently or otherwise...." A single signature likely would not, in the absence of mistake, be intended to authenticate two contradictory writings such as these.

9

the bank considered the obligations [imposed by the alleged agreement], much less that it prudently considered them." *Id.*

The rationale of *Twin Construction* applies with equal force here. Allowing Hall to present parol evidence, such as Harrison's affidavit, would force the FDIC and its transferees to look beyond the plain terms of the documents. That is a burden of which the *D'Oench, Duhme* doctrine seeks to relieve them. Thus, Hall cannot offer Harrison's affidavit as evidence that Southeast "signed" the letter agreement.

We conclude that Hall did not present evidence sufficient to raise a material question of fact as to whether Southeast "executed" the agreement. We therefore hold that the district court did not err in entering summary judgment in favor of First Union on the ground that the *D'Oench, Duhme* doctrine bars Hall's defenses and counterclaims against the note. In light of this conclusion, we need not reach the merits of Hall's argument that the district court improperly denied him discovery to establish that Southeast's board of directors or loan committee minutes reflected its approval of the letter agreement.

AFFIRMED.