United States Court of Appeals,

Fifth Circuit.

No. 92-7584.

ALEXANDRIA ASSOCIATES, LTD., a Florida Limited Partnership and Anthony J. LaSala, Plaintiffs-Appellants, Cross-Appellees,

v.

The MITCHELL COMPANY, an Alabama General Partnership and Mitchell Equities, a Florida General Partnership, Defendants-Appellees, Cross-Appellants.

Sept. 24, 1993.

Appeal from the United States District Court for the Southern District of Mississippi.

Before WIENER and EMILIO M. GARZA, Circuit Judges, and LITTLE[*], District Judge.

WIENER, Circuit Judge:

We are called upon once again to delineate the boundaries of the *D'Oench, Duhme* doctrine. Plaintiffs-Appellants, Alexandria Associates, Ltd., a limited partnership, and Anthony J. LaSala, one of its general partners (jointly "Alexandria"), appeal the district court's grant of summary judgement, dismissing their securities fraud and common law tort claims against Defendants-Appellees, The Mitchell Company, an Alabama general partnership, and Mitchell Equities, a Florida general partnership (jointly, the "Mitchells"), as barred by the *D'Oench, Duhme* doctrine. Concluding that *D'Oench* does not apply to the instant non-banking transactions, which were sales of partnership interests in real estate development partnerships, we reverse and remand.

I

FACTS AND PROCEEDINGS

This case comprises four non-bank parties involved in several non-banking transactions consisting of the purchases and sales of partnership interests in real estate ventures. The essence of Alexandria's assertions is that the Mitchells made misrepresentations regarding those sales, and that the interests sold were securities within the contemplation of the federal securities laws. The operable

_____

[*]District Judge of the Western District of Louisiana, sitting by designation.

facts, for purposes of this appeal,[1] are as follows.

The Mitchells are ordinary or general partnerships—that is, they are not limited partnerships.[2] All partners are corporations, each of which is a wholly owned subsidiary of Altus Real Estate. When the instant transactions occurred, Altus Real Estate was a wholly owned subsidiary of Altus Bank. It was not until 1991, after Altus Bank failed and went into receivership, that the Resolution Trust Corporation ("RTC") established Altus Federal Savings Bank ("Altus FSB") and, as receiver of Altus Bank, transferred the stock of Altus Real Estate to Altus FSB. Thus the multi-tiered organizational structure on the defense side of this litigation is: (a) Altus FSB (as successor to Altus Bank and not a party herein) is the parent corporation of Altus Real Estate (also not a party herein); (b) Altus Real Estate in turn is the parent corporation of each corporate partner of the Mitchells, the two ordinary partnerships which are Defendants-Appellants herein; (c) the Mitchells in turn were partners in each of the limited partnerships that (i) owned one of the subject apartment projects, and (ii) was an entity in which Alexandria purchased a partnership interest.[3]

In 1986, John Saint, president of each corporate sub-subsidiary which in some combination controlled the Mitchell partnerships, contacted LaSala in an effort to sell partnership interests in the limited partnerships owned by the Mitchells to Alexandria.[4] Each of these limited partnerships had

---

[1]The Mitchells moved for summary judgement on the contention that Alexandria and LaSala's claims were barred by *D'Oench, Duhme*—the central issue of this appeal. The Mitchells also moved for summary judgement on the contention that the partnership interests were not securities. The district court found that there was a genuine issue of material fact as to the securities issue and denied the motion. *Alexandria Associates, Ltd. v. Mitchell Co.,* 800 F.Supp. 1412, 1417 (S.D.Miss.1992). As we generally do not have jurisdiction to consider the denial of a motion for summary judgement, we express no opinion on the securities issue. *E.g., Landry v. G.B.A.,* 762 F.2d 462, 464 (5th Cir.1985) (dismissing appeal for want of appellate jurisdiction when jurisdiction is based on denial of a motion for summary judgement).

[2]To be an ordinary or general partnership in Florida and Alabama (the states of domicile for the Mitchell partnerships) a partnership cannot have any limited partners. To qualify as an entity that can have limited partners the entity must, inter alia, include Limited or Ltd. in the partnership name. *See* ALA.CODE § 10-9A-1 et seq., FLA.STAT. ch. 620.101 et seq.

[3]The parties vigorously contest whether the partnership interests acquired by Alexandria were limited or general. At this stage of the litigation that question is not crucial, so we do not address it.

[4]In addition to the partnership interests here at issue, Saint eventually sold an apartment complex and warehouse to Alexandria in fee.

been formed to build, own, and manage a particular apartment complex. Alexandria eventually purchased the contested interests in those partnerships, making cash down payments totaling $400,000. The remaining balance of the purchase price of each interest thus acquired by Alexandria was financed with a non-recourse loan from the Mitchells secured by a mortgage on the real estate of the limited partnership in which such interest was purchased.

Alexandria intended to syndicate itself and sell shares to investors. It planned to use the proceeds to pay off the purchase loan indebtedness. But Alexandria was unable to confect the syndication, so it could not service its mortgage debts according to their tenor. When the loans fell into default, the Mitchells foreclosed. As a result, Alexandria lost its entire $400,000 investment. The foreclosures occurred in November, 1988, and Alexandria filed suit against the Mitchells in December, 1988. In March, 1992,—over three years after suit was filed and at a time shortly after Altus FSB succeeded Altus Bank—the Mitchells moved for summary judgement, contending that Alexandria's claims were barred by the *D'Oench, Duhme* doctrine and its statutory counterpart, 12 U.S.C. § 1823(e). The Mitchells advanced the theory that, as the purported misrepresentations were not in writing, they were "secret agreements" under *D'Oench* so that Alexandria's claims that were grounded in those misrepresentations were barred. Even though the transactions in question involved a partnership owned by subsidiaries of a subsidiary of Altus FSB and even though none among Altus FSB, Altus Real Estate, the RTC, the FSLIC, or the FDIC ever intervened to assert *D'Oench* or FIRREA, the district court concluded that *D'Oench* applied to the Mitchells and entered summary judgement for them.[5] Alexandria timely appealed.

II

STANDARD OF REVIEW

We review the district court's grant of summary judgement by "reviewing the record under the same standards which guided the district court."[6] A grant of summary judgement is proper when

---

[5]*Alexandria Associates, Ltd. v. Mitchell Co.,* 800 F.Supp. 1412 (S.D.Miss.1992).

[6]*Walker v. Sears, Roebuck & Co.,* 853 F.2d 355, 358 (5th Cir.1988).

no genuine issue of material fact exists that would necessitate a trial.[7]  In determining whether the grant was proper, all fact questions are viewed in the light most favorable to the nonmovant. Questions of law, however, are decided de novo.[8]

## III

## ANALYSIS

Alexandria asserts three alternative grounds to challenge the district court's holding that *D'Oench, Duhme* bars their claims.  First, they argue that *D'Oench* does not apply to non-banking transactions such as these, involving the ordinary commercial sale of interests in real estate ventures. Second, Alexandria asserts that, even assuming arguendo that *D'Oench* could be applicable to these types of transactions under other circumstances, *D'Oench* does not apply when such transactions are conducted by a third generation, non-banking subsidiary.  Finally, Alexandria insists that the common law *D'Oench* doctrine has been preempted by FIRREA,[9] and that FIRREA's reach does not extend to transactions of the nature here involved.  As we agree with Alexandria's first contention—that *D'Oench* does not apply to non-banking transactions involving the ordinary commercial sale of partnership interests in real estate development ventures—we need not and therefore do not address Alexandria's alternative arguments.[10]

A. *Policies Underlying the* D'Oench *Doctrine*

This court has previously noted that *D'Oench* is "an arguably harsh rule"[11] that is "expansive

---

[7]*Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25, 106 S.Ct. 2548, 2552-54, 91 L.Ed.2d 265 (1986);  *see* FED.R.CIV.P. 56(c).

[8]*Walker,* 853 F.2d at 358.

[9]Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. No. 101-73, 103 Stat. 183 (codified at 12 *U.S.C.* § 1811 et. seq. (1991)).

[10]In *Garrett v. Commonwealth Mortgage Corp. of America,* 938 F.2d 591, 595 (5th Cir.1991) we found it unnecessary to determine whether subsidiaries may properly assert defenses available under the *D'Oench* doctrine.  We continue to find it unnecessary to decide this issue to resolve the present case.

[11]*Texas Refrigeration Supply, Inc. v. FDIC,* 953 F.2d 975, 979 (5th Cir.1992).

and perhaps startling in its severity."[12]  We have applied *D'Oench* to bar, inter alia, claims of fraud under the federal securities law,[13] and we have allowed successors in interest to the federal bank regulatory agencies to invoke the protections of *D'Oench.*[14]  The essence of these protections is that *D'Oench* bars enforcement of "agreements" against federal banking agencies unless those agreements have been *approved* contemporaneously by the bank's board or loan committee and *recorded* in the bank's written records.[15]

The Supreme Court in *Langley v. FDIC*[16] voiced a twofold justification for invoking the "arguably harsh" bar of *D'Oench.*  The *Langley* Court found the *recordation* requirement justified because it allows federal and state bank examiners to rely exclusively on the bank's records in evaluating the worth of the bank's assets.[17]  The Court found justification for the *approval* requirement in its assurance of "mature consideration of unusual loan transactions by senior bank officials."[18]  We have articulated a third justification for *D'Oench:*  that, among the bank's borrowers creditors, and depositors, the borrowers are the ones who should bear the risk of loss because they are better situated than either the creditors or the depositors of federally insured institutions to protect themselves in regards to agreements made with such institutions.[19]

B. D'Oench *and Non-banking Transactions*

The consistent focus of *D'Oench* 's protection has always been on banking transactions

---

[12]*Bowen v. FDIC,* 915 F.2d 1013, 1015 (5th Cir.1990).

[13]*Kilpatrick v. Riddle,* 907 F.2d 1523, 1524 (5th Cir.1990), *cert. denied sub. nom., Rogers v. FDIC,* 498 U.S. 1083, 111 S.Ct. 954, 112 L.Ed.2d 1042 (1991).

[14]*Porras v. Petroplex Savings Ass'n,* 903 F.2d 379, 379 (5th Cir.1990).

[15]*E.g. Thigpen v. Sparks,* 983 F.2d 644, 649 (5th Cir.1993);  *Texas Refrigeration Supply,* 953 F.2d at 979.

[16]484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987).

[17]*Id.* at 91, 108 S.Ct. at 401;  *see also Bowen v. FDIC,* 915 F.2d 1013, 1016 (5th Cir.1990) (stating same).

[18]*Langley,* 484 U.S. at 92, 108 S.Ct. at 401.

[19]*Texas Refrigeration Supply,* 953 F.2d at 979;  *Kilpatrick v. Riddle,* 907 F.2d 1523, 1529 (5th Cir.1990).

engaged in by federally insured institutions.[20] We have construed the concept of banking transactions broadly, ranging from the typical loan agreement[21] to promises to lend.[22] In so doing, however, we have recognized that the *D'Oench* doctrine is not transactionally infinite: It is not a limitless, per se guarantee of victory by federal banking agencies and their successors in interest.[23]

In *Thigpen v. Sparks*[24] we defined one limit of the *D'Oench* doctrine which is particularly germane to the instant appeal. There the appellant, Sparks, purchased a wholly-owned trust company from BancTexas. The chairman of BancTexas falsely represented to Sparks that the trust company's charter had been maintained "in good standing" without interruption. Yet when Sparks eventually attempted to sell the trust company he found that he could not because its charter had been revoked temporarily for non-payment of franchise taxes. He therefore sued BancTexas under a breach of warranty claim. Like Altus Bank here, BancTexas became insolvent during the pendency of the suit, and the FDIC was appointed receiver. But in *Thigpen* it was the FDIC that moved for and was granted summary judgement on the theory that Sparks' claim was an "agreement" barred under the FIRREA provision that incorporated the statutory version of the *D'Oench* doctrine.[25]

Reversing the district court in *Thigpen,* we concluded that § 1821(d)(9)(A) of FIRREA incorporated the limitations expressed in § 1823(e), the statutory enactment of the *D'Oench*

---

[20]*See Thigpen,* 983 F.2d at 649 (commenting that the statutory *D'Oench* doctrine relates to banks in their capacity as banks and refusing to extend this doctrine to include a bank's sale of an asset in a non-banking transaction); *Bowen,* 915 F.2d at 1016-17 (discussing importance of *D'Oench* in relation to the evaluation of bank transactions and protection of federally insured bank assets); *see also, OPS Shopping Center, Inc. v. FDIC,* 992 F.2d 306, 310-11 (11th Cir.1993) (distinguishing between claims based on whether they are predicated on a banking or a non-banking transactions).

[21]*E.g., Porras,* 903 F.2d at 649 (loans for a construction project).

[22]*Bowen,* 915 F.2d at 1013-14 (holding that *D'Oench* bars claims based on the breach of a promise to lend).

[23]*See Thigpen,* 983 F.2d at 649 (noting that *D'Oench* is not a "meat-axe" for avoiding debts incurred in the ordinary course of business).

[24]983 F.2d 644 (5th Cir.1993).

[25]*Id.* at 645.

doctrine,[26] noting that § 1823(e) states expressly that it applies to the *acquisition* of an asset.[27]  We also commented on the problems inherent in adopting a construction of FIRREA that would include within its ambit any and all agreements regardless of their nature, subject matter, or circumstances. We reasoned that inclusion of non-banking transactions within the coverage of § 1823(e) and § 1821 could lead to absurd results.  For example, each ordinary trade creditor of a bank would find it necessary to have its purchase order or other contract documents approved by the bank's directors and recorded in the Board's minutes if such creditor was to avoid potential uncollectibility under *D'Oench.*[28]  Thus, we held in *Thigpen* that the statutory incarnations of the *D'Oench* doctrine do not apply to a bank's *disposition* of an asset in a non-banking transaction.[29]  It follows that if *D'Oench* does not apply to the bank itself, then surely it does not apply to subsidiaries of the bank's non-bank subsidiaries!

   *Thigpen* and the policies underlying the *D'Oench* doctrine mandate a like result in the present case.  The Mitchells were engaged in the ordinary commercial sale of non-bank assets—partnership interests in real estate development ventures.  These sales assuredly were non-banking transactions; banks simply do not engage in the sale of partnership interests in real estate development ventures in the ordinary course of banking business.[30]  The fact that these were sales by a third generation non-banking subsidiary, thereby implicating the jurisprudential version of the *D'Oench* doctrine, fails to distinguish this case from *Thigpen.*[31]

---

[26]*Id.* at 648-49.

[27]The relevant language of § 1823(e) states that it applies to:  "[Any] agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 if this title ...".  12 U.S.C. § 1823(e).

[28]*Thigpen,* 983 F.2d at 649.

[29]*Id.*

[30]We recognize the possibility that a regulatory agency serving as conservator or receiver, or a successor financial institution, engaged in liquidating assets of a failed or troubled institution might dispose of such assets and be within the scope of *D'Oench,* but that is not what happened here.

[31]We have stated previously that the common law and statutory *D'Oench* doctrines have been virtually interchangeable in our jurisprudence.  *Texas Refrigeration Supply,* 953 F.2d at 979 n. 3.

Moreover, even if we assume for the sake of this discussion that FIRREA allows the extension of the jurisprudential version of the *D'Oench* doctrine beyond the limits of the statutory one,[32] we discern no reason to do so in the present case.[33] The purposes of neither the recordation nor approval requirements of *D'Oench* would be furthered by including non-banking transactions within the aegis of the doctrine. The substantial volume of information regarding areas of commerce outside the bank examiners' expertise or cognizance, generated day by day in myriad non-banking transactions, would simply overwhelm the bank's officers and directors; besides, such information would not be likely to aid the examiners in evaluating miscellaneous non-banking assets of the troubled bank. Requiring bank boards or loan committees to consider, approve, and record every transaction entered into by a bank—and especially by entities held by the bank as investments or subsidiaries—would make virtually impossible the performance by officers and directors of their upper level management and policymaking functions, not the least of which is deciding constantly whether and on what terms to grant loans.

Finally, we seriously question whether a third party involved in a non-banking transaction—particularly a transaction with subsidiaries of a subsidiary such as the ones at issue here—would be in a better position than depositors or creditors of that bank to protect themselves by mandating board consideration and recordation in the bank's minutes. Commercial expectations simply do not include the belief that every agreement with a bank (much less with its sub-sub-subsidiaries) must be scrutinized, approved, and recorded by the bank's executive committee

And as we note above, this case provides a poor vehicle to justify extending the jurisprudential *D'Oench* doctrine beyond the statutory one.

[32]Again, it is unnecessary to determine whether FIRREA preempts—or supplants—the jurisprudential *D'Oench* doctrine. *Cf. In re NBW Commercial Paper Litigation,* No. 90-1755, 1992 WL 73135 at 6-9 (D.D.C. March 11, 1992) (concluding that FIRREA does not preempt the common law *D'Oench* doctrine).

[33]Unlike those prior cases in which we extended *D'Oench* to fill in the interstices in the relevant statutes in order to provide protection to entities such as assignees of the FDIC, see *Porras,* 903 F.2d at 381, or to protect the FDIC, et al. from affirmative claims based on banking transactions, see *Bowen,* 915 F.2d at 1015-16, this case would require us to extend *D'Oench* to include a virtually unlimited and undefinable category of transactions if, like the district court, we were to accept the Mitchells' invitation thus to give virtually unlimited reach to the tentacles of *D'Oench.*

or board.[34]

## IV

## CONCLUSION

The Mitchells effort to invoke *D'Oench* as a bar to any judicial consideration whether they engaged in fraud in connection with the sale of partnership interests in real estate development partnerships constitutes overreaching in the extreme, and is thus misdirected. Our recent decision in *Thigpen* has foreclosed any appeal to a statutory *D'Oench* bar under FIRREA, and we can find no reason to extend the venerable jurisprudential version of *D'Oench* to cover the same type of transaction, particularly when as here such transactions are engaged in by a third generation subsidiary. As we conclude that *D'Oench* does not apply to such non-banking transactions under circumstances such as those here under review, involving the sale of partnership interests in real estate development partnerships, we reverse the district court's grant of summary judgement and remand for trial on Alexandria's securities fraud and common law tort claims. In so doing we imply no prediction as to the ultimate determination of those claims on their merits.

REVERSED and REMANDED.

---

[34]*Cf. Sunbelt Savings, FSB Dallas v. Montross,* 923 F.2d 353, 357 (5th Cir.1991) (concluding that extending the federal holder in due course doctrine to non-negotiable instruments would defeat the reasonable commercial expectations of the makers).