92 F.3d 1192
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
James Gary FEEZOR, and Elladene Feezor, husband wife,
Plaintiffs-Appellants,
v.
The BOARD OF the NATIONAL CREDIT UNION ADMINISTRATION as
Liquidating Agent for Western Horizon Federal
Credit Union, Defendant-Appellee.
 No. 95-15031.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 9, 1996.*
Decided May 9, 1996.
 
 1
 Before: BROWNING and NOONAN, Circuit Judges, and MERHIGE, Senior District Judge.**
 
 
 2
 MEMORANDUM**
 
 
 3
 James Gary Feezor and his wife Elladene Feezor ("Feezors") appeal the district court's entry of summary judgment in favor of the Board of the National Credit Union Administration ("NCUA"), as liquidating agent for Western Horizon Federal Credit Union ("WHFCU").
 
 I.
 
 4
 In November of 1988, John and Nedra Hogle, husband and wife, were in a Chapter 11 bankruptcy proceeding. The Hogles were then indebted to the Western Horizons Federal Credit Union ("WHFCU"), on various notes. Appellant Gary Feezor ("Feezor") was John Hogle's brother-in-law.
 
 
 5
 The Feezors borrowed $931,000 from WHFCU on or about November 29, 1988. In connection with that borrowing, the Feezors signed a variable rate loan agreement and consumer credit disclosure statement ("the $931,000 Note") dated November 29, 1988. The Feezors secured the $931,000 Note by signing a deed of trust and assignment of rents encumbering real property located in Navajo County, Arizona known as the "Woods at Pinetop."
 
 
 6
 The Feezors did not receive cash from WHFCU in exchange for delivering the $931,000 Note. Rather, the Feezors received in exchange various notes relating to the Hogles' indebtedness to WHFCU. The $931,000 Note lists these various notes by account number but does list the borrower or describe the security or give any other identification. The intention of the Feezors in engaging in this transaction, apparently, was to assist their relatives in emerging from bankruptcy.
 
 
 7
 In support of the $931,000 Note, there was a WHFCU Executive Committee Memorandum dated November 14, 1988 ("November 14 Board Memorandum") that was signed by WHFCU board members. On or about December 1, 1988 Feezor and Carl Bixler, WHFCU's Vice-President of Lending, signed a Memorandum of Understanding ("Memorandum of Understanding"). The Memorandum of Understanding states, in relevant part:
 
 
 8
 It is understood and agreed to by all parties that the property held in title by Hogle of which WHFCU has a lien position shall be in exchange by an assignment of beneficial interest by WHFCU to Feezor.
 
 
 9
 On March 22, 1989, the Feezors executed an adjustable rate note ("the $13,700 Note") in favor of WHFCU for the sum of $13,700. The proceeds of this loan were used to pay off a WHFCU loan which was an unsecured line of credit to Nedra Hogle. The $13,700 Note was secured by a deed of trust. WHFCU Executive Committee approved this loan based upon the loan officer's notation that Nedra Hogle's unsecured line of credit was not "picked up" during the process of approving the $931,000 loan.
 
 
 10
 On March 24, 1989, Carl Bixler sent a letter ("the Bixler Letter") to the Feezors. This letter states:
 
 
 11
 This letter is to confirm that Western Horizons Federal Credit Union for value received has committed transfer by assignment of beneficial interest all deeds of trust executed by John Hogle, Sr. and Nedra Leann Hogle together with notes secured and unsecured.
 
 
 12
 After making payments on the $931,000 Note for several months, the Feezors failed to make the monthly payment due August 5, 1989 and have failed to make all payments due thereafter. In addition the Feezors made payments on the $13,700 Note for several months until failing to make the monthly payment due July 1, 1989. The Feezors failed to make all payments thereafter.
 
 
 13
 The Feezors were given notice of default and demand by WHFCU under both the $931,000 Note and the $13,700 Note. The Feezors then commenced this action in state court on May 20, 1991 seeking recision of both notes, or in the alternative, damages against WHFCU on the basis of certain alleged oral misrepresentations. WHFCU counterclaimed seeking recovery of the indebtedness.
 
 
 14
 On December 17, 1991, WHFCU was ordered liquidated by the National Credit Union Administration Board ("NCUA"). As liquidating agent, the NCUA timely removed this case to the United States District Court for the District of Arizona. The Feezors assert that included in the twelve notes which they had purchased were two notes which Feezor had previously issued to WHFCU himself. The Feezors also assert that six notes included were not of Hogle, but of a joint venture consisting of two corporations known as the CDR Joint Venture. The Feezors also assert that included was a note ("the House Note") that was marked "paid," the security for which had been released. The Feezors also assert that the value of the security of the remaining notes was substantially less than the amounts that Feezors had paid to purchase such notes and that there was a technical error in the largest of the notes, throwing into question the validity of the security for this note. Finally, the Feezors assert that they have never received assignments of the House Note or of the unsecured note.
 
 
 15
 The Feezors claim that they were informed by Bixler that all notes to be purchased were fully secured except for approximately $60,000 of unsecured notes. The Feezors also claim that their agreement was to purchase only the notes of the Hogles individually. The Feezors claim that they were not given an opportunity to inspect any of WHFCU's records or documents and were not aware of what specific notes they would be purchasing or what such notes were secured by when they signed the $931,000 and $13,700 Notes.
 
 
 16
 The NCUA asserts that the Feezors were aware that their own $70,000 note owed to WHFCU would be paid off out of the $931,000 loan. The NCUA also asserts that the Feezors were aware that the CDR loans were among those to be paid off. The NCUA further asserts that the House Note was marked "paid" and then marked "paid in error." Finally, the NCUA asserts that there is no defect in any of the notes and that no WHFCU records contain any statement to the effect that the unsecured notes transferred to the Feezors were to be transferred by a separate assignment and not just by delivery. The NCUA asserts that the unsecured notes were delivered to the Feezors.
 
 II.
 
 17
 The district court entered summary judgment against the Feezors on the basis that the Federal Credit Union Act, 12 U.S.C. § 1787(p)(2), which sets forth requirements for the enforceability against NCUA of agreements entered into by credit unions, precludes them from relying on the Bixler Letter and Memorandum of Understanding--evidence that they had asserted would establish grounds for non-payment on the Note held by the NCUA, as receiver for WHFCU, by providing a basis for rescinding the overall transaction that had led the Feezors to deliver the Note to WHFCU in the first instance.
 
 
 18
 A grant of summary judgment is reviewed de novo. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995). Upon review of an order granting summary judgment, the Court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Id. at 441.
 
 
 19
 12 U.S.C. § 1787(p)(2) bars the use of extrinsic agreements to defeat the NCUA's interest in an asset unless the agreement meets certain statutorily enumerated requirements. § 1787(p)(2) provides as follows:
 
 
 20
 (2) No agreement which tends to diminish or defeat the right, title, or interest of the Board in any asset acquired by it under this subsection, either as security for a loan or by purchase, shall be valid against the Board unless such agreement--
 
 
 21
 (A) shall be in writing;
 
 
 22
 (B) shall have been executed by the credit union and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the credit union; CR shall have been approved by the board of directors of the credit union, which approval shall be reflected in the minutes of such board; and
 
 
 23
 (D) shall have been, continuously, from the time of its execution, an official record of the credit union.
 
 
 24
 The Feezors pursue two lines of attack on the district court's decision that § 1787(p)(2) barred them from relying on evidence that they assert establishes a basis for non-payment on the Note held by the NCUA. First, the Feezors assert that § 1787(p)(2) is simply inapplicable in this instance. Second, the Feezors assert that, even if the statute applies, that its terms are not violated by their reliance on the Bixler Letter and Memorandum of Understanding.
 
 
 25
 The Feezors first argue that the statute is inapplicable to non-banking transactions. The Feezors assert that their dealings with the WHFCU is more akin to a sale of assets than an ordinary banking transaction. The Feezors cite Thigpen v. Sparks, 983 F.2d 644 (5th Cir.1993), and Alexandria Associates, 2 F.3d 598 (5th Cir.1993). These cases are simply not on point. In Thigpen the Fifth Circuit held that 12 U.S.C. § 1823(e) was not applicable in a transaction where a bank sold a wholly-owned trust company.[1] In Alexandria Associates a subsidiary of a bank was selling partnership interests in real estate development ventures. In this case, by contrast, the Feezors, according to their own story, became indebted to WHFCU by delivering the Note in exchange for WHFCU delivering some of its loan assets to them. This is a banking transaction.
 
 
 26
 Second, the Feezors have also suggested that there is no "asset" within the meaning of the statute. The $931,000 Note held by the NCUA, and which the Feezors seek not to pay, is an "asset." Indeed, it is precisely the variety of asset contemplated by the statute.
 
 
 27
 The Feezors also argue that, even if the statute applies, it does not preclude reliance on the Memorandum of Understanding and the Bixler Letter to establish the purported agreement of WHFCU to assign certain notes to the Feezors because these documents meet the standard of § 1787(p)(2). Both of these documents are signed by Carl Bixler, the Vice-President of WHFCU and are on WHFCU stationary. The Bixler letter, however, is not signed by either of the Feezors and, therefore, plainly falls afoul of § 1787(p)(2)(B). Additionally, the Court concludes that any purported agreement embodied in either the Bixler Letter or the Memorandum of Understanding has not "been approved by the board of directors of the credit union, which approval shall be reflected in the minutes of such board" within the meaning of § 1787(p)(2)(C).
 
 
 28
 The Feezors urge that the Bixler letter and Memorandum of Understanding do meet the board approval requirement in this case because the Board of WHFCU approved the "overall agreement." The Feezors argue that the November 14, 1988 Board Presentation, which clearly meets the requirements of § 1787(p)(2), satisfies the board approval requirement with respect to the Bixler Letter and Memorandum of Understanding as well because these latter two documents were part of the same "overall agreement" as that approved by the board and were contemporaneously executed with such board approval. The Feezors rely on RTC v. Midwest Savings Bank of Minot, 36 F.3d 785 (9th Cir.1994) and Falk v. Mt. Whitney Savings & Loan Ass'n, 5 F.3d 347 (9th Cir.1993).
 
 
 29
 These cases are inapposite. In Midwest Savings this Court merely held that the contemporaneousness requirement of the analogous § 1823(e) must be interpreted in light of "commercial reality." 36 F.3d at 797-798. "Contemporaneousness," however, is an element of § 1787(p)(2)(B) and is not directly relevant to the board approval requirement of § 1787(p)(2)(C). Indeed, in the Midwest Savings decision this Court specifically noted that the board in that case "approved the loan including the nonrecourse provision." Id. at 798. Similarly, this Court's decision in Falk is not germane to whether the board approval requirement of § 1787(p)(2)(C) has been met. In Falk this Court held that the trial court had erred in granting summary judgment to the FDIC not because the terms of § 1823 had been met, but because the D'Oench doctrine may not have been applicable because the defunct bank never had even taken an interest in the disputed collateral. 5 F.3d at 350-351.
 
 
 30
 The board approval requirement of § 1787(p)(2)(C) necessitates that the credit union's board of directors have specifically acknowledged its approval of any agreement that is to form the basis of a claim or defense against the NCUA. See FDIC v. Manatt, 922 F.2d 486, 488-489 (8th Cir.1991) and cases cited therein. In this case the WHFCU board minutes do not reflect what the Feezors now claim their agreement was with WHFCU. The minutes refer to the consolidation of loans to CDR joint Venture and to Gary Feezor as well as those of the Hogles. The minutes make no reference to assignment of notes. Furthermore, neither the Memorandum of Understanding or the Bixler Letter upon which the Feezors seek to rely were executed until well after the board approved the loan to the Feezors and, thus, could not have been silently considered by the board members when approving the transaction. In this situation the Court concludes that neither the Memorandum of Understanding or the Bixler Letter meet the requirements of § 1787(p)(2)(C).
 
 III.
 
 31
 Concluding that the entry of summary judgment by the trial court in the case was mandated by 12 U.S.C. § 1787(p)(2); we AFFIRM.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to 9th Cir.R. 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 The Honorable Robert R. Merhige, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation
 
 
 ***
 This disposition is not suitable for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 § 1823(e), which operates to protect the FDIC, is functionally identical to § 1787(p)(2), which operates to protect the NCUA