[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-13896

_____

PEN AMERICAN CENTER, INC.,

GEORGE M. JOHNSON,

KYLE LUKOFF,

ANN NOVAKOWSKI,

On Behalf of Herself and Her Minor Child,

PENGUIN RANDOM HOUSE, LLC., et al.,

Plaintiffs-Appellees,

SARAH BRANNEN, et al.,

Plaintiffs,

*versus*

ESCAMBIA COUNTY SCHOOL DISTRICT, et al.,

Defendants,

2                    Opinion of the Court                    24-13896

ESCAMBIA COUNTY SCHOOL BOARD,

                                                    Defendant-Appellant,

KEVIN ADAMS,
PAUL FETSKO,
PATTY HIGHTOWER,
WILLIAM SLAYTON,
DAVID WILLIAMS,

                                        Interested Parties-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 3:23-cv-10385-TKW-ZCB

_____

Before BRANCH, ABUDU, and KIDD, Circuit Judges.

PER CURIAM:

        This appeal comes to us in an unusual posture, as it pertains
to a discovery dispute instead of a final judgment.  After a group of
plaintiffs sued the Escambia County School Board ("Board") for
allegedly violating the First Amendment by removing or restricting
access to certain books in Escambia County public school libraries,

the plaintiffs sought to take the depositions of the Board's members. The Board in turn sought a protective order on behalf of its members based on, among other grounds, "legislative privilege." A magistrate judge granted a protective order based on the Board's assertion of a legislative privilege on behalf of its members. But the district court vacated that protective order, and the Board and its members appealed.

The problem for the Board and its members is that this case does not fit in the narrow set of circumstances where we can hear an appeal of a nonfinal order. The Board cannot appeal because it lacks standing: the legislative privilege belongs to its members and not the Board itself. And the Board members failed to participate in the case below, meaning they do not fall into the limited circumstances under which a nonparty may appeal an order. We therefore lack jurisdiction to hear this appeal and must dismiss.

## I.     Background

At the heart of this appeal is the decision of the Board to remove or restrict access to several books in school libraries in the Escambia County School District after receiving complaints in 2022. The complaints came from Vicki Baggett, a county teacher, about the use or age placement of the books for diverse reasons related to the book's contents, including that they allegedly contained "pornography," "race-baiting," and "explicit language"; "encourage[d] pedophilia"; and presented an "LGBTQ agenda using penguins."

Under Florida law at the time of the events implicated here, "[e]ach district school board [was] responsible for the content of all instructional materials and any other materials used in a classroom, made available in a school or classroom library, or included on a reading list."  Fla. Stat. § 1006.28(2)(a)1.  This responsibility included the mandate that the "school board must adopt a policy regarding an objection by a parent or a resident of the county to the use of a specific material, which clearly describe[d] a process to handle all objections and provide[d] for resolution." *Id.* § 1006.28(2)(a)2.  The process also permitted the objecting party to present evidence that the challenged material was (1) pornographic, (2) depicted or described sexual conduct, (3) was not suited to student needs and their ability to comprehend the material presented, or (4) was inappropriate for the grade level and age group for which the material was used.  *Id.* § 1006.28(2)(a)2.b.

In keeping with this mandate, the Board enacted a policy for addressing objections to books found in the Escambia County School District's libraries.  Under that policy, after receiving an objection, a district review committee reviewed the book and made a decision.  That decision could then be appealed to the Board.  The Board had final decision-making authority on what, if any, restrictions would be placed on the books.

After reviewing Baggett's complaints, the Board removed nine books and restricted access to others pending further review.[1]

---

[1] In their complaint, Plaintiffs asserted that ten books were removed.  On appeal, they assert that only nine were removed.

24-13896                Opinion of the Court                5

In some instances, the Board voted to remove books from all libraries, and in other instances the Board voted to allow only older students to access the books.

Plaintiffs[2] challenged the Board's decision to remove the books, alleging the decision violated their First Amendment rights. According to Plaintiffs, the removals were purely based on ideological disagreements with the contents of the books. Such removals on ideological grounds, Plaintiffs argued, constitute a government invasion of protected speech rights. Given their theory centered on the motive for the removal of the books, Plaintiffs sought to depose the individual members of the Board regarding their motivations for their actions.

The Board moved for a protective order to prevent the depositions, asserting, as relevant here, that its members possessed a legislative privilege preventing inquiry into their voting decisions on the matter. However, the Board's first motion was denied without prejudice by the magistrate judge, explaining that the motion failed because "the legislative privilege is personal to the legislator" and the Board's motion failed to include an indication that the individual Board members wished to invoke the privilege.

The Board filed a renewed motion for a protective order, asserting its intention to bring the motion on behalf of its members.

---

[2] Plaintiffs here are a nonprofit organization and publishing company, parents whose children attend school within the district, and authors whose books have been removed or restricted by the Board (collectively "Plaintiffs").

In support, it attached a declaration from each Board member stating that "to the extent the legislative privilege is applicable to me and may be invoked by me, I confirm my intent to assert the legislative privilege here." The Board members made no motions or appearances themselves and did not participate in any other way in the proceedings on the motion.

The magistrate judge granted the Board's protective order on legislative privilege grounds, but, after objections from Plaintiffs, the district court reversed.

The Board appealed the district court's order. So too did the individual Board members, marking their first appearance in this case. The district court stayed all proceedings pending resolution of this appeal.

## II.    Standard of Review

"We have a special obligation to satisfy ourselves of our own jurisdiction before proceeding to the merits of an appeal." *Finn v. Cobb Cnty. Bd. of Elections & Registration*, 111 F.4th 1312, 1316 (11th Cir. 2024) (alteration adopted) (quotations omitted). Questions relating to our own appellate jurisdiction are reviewed *de novo*, as no other court has occasion to pass on issues relating to our own jurisdiction. *Id.*

## III.    Discussion

The Board makes several arguments in opposition to the district court's denial of its motion for a protective order. Plaintiffs argue in response that we lack appellate jurisdiction because there

is no final order and the collateral order doctrine does not apply because no party has standing to appeal the collateral order at issue. In their view, the Board has not been aggrieved by the district court's order, and the Board members failed to intervene or otherwise meaningfully participate in the district court proceedings, making appellate review at this stage inappropriate. The Board counters that appellate jurisdiction is proper under the collateral order doctrine because the Board brought the motion for a protective order on behalf of its members, and because Plaintiffs did not challenge either the Board's involvement or the Board members' level of participation in the proceedings below.

We agree with Plaintiffs and find we have no appellate jurisdiction to consider the merits of this appeal.

Under 28 U.S.C. § 1291, we normally have jurisdiction to review only "final decisions of the district courts of the United States." "This final judgment rule requires that a party must ordinarily raise all claims of error in a single appeal following final judgment on the merits." *Flanagan v. United States*, 465 U.S. 259, 263 (1984) (quotation omitted). "The collateral order doctrine, however, recognizes a small category of decisions that, although they do not end the litigation, must nonetheless be considered final" because they would be effectively unappealable after final judgment. *In re Hubbard*, 803 F.3d 1298, 1305 (11th Cir. 2015) (quotations omitted).

One of the established exceptions under the collateral order doctrine is that "one who unsuccessfully asserts a governmental

privilege may immediately appeal a discovery order where he is not a party to the lawsuit." *Id.* "Our precedent is clear that government officials may appeal from the discovery order itself without waiting for contempt proceedings to be brought against them." *Id.* In other words, even where no final judgment has been rendered, collateral appeal of a discovery order may be appropriate where a legislative privilege is asserted but denied.

But the existence of an appealable collateral order is not the only requirement for our jurisdiction to be proper. For us to properly exercise jurisdiction, Article III of the Constitution also requires us to ensure there is a real controversy between the parties at each stage of the litigation. *See Wolff v. Cash 4 Titles*, 351 F.3d 1348, 1353 (11th Cir. 2003). In the context of appellate standing, the controversy requirement means a litigant must "establish their standing . . . to appeal judgments" by showing he was "aggrieved by the judgment" itself. *Id.* at 1353–54 (quotation omitted). Further, in order to ensure true adversariness, "there is a well settled rule that only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment." *Finn*, 111 F.4th at 1316 (quotations omitted).

As for who "counts as a party," for purposes of adversity and standing, we have suggested in dicta that there may exist "an exception" to our well-settled rule "where a nonparty—who has not, for example, intervened—may still be considered a party who can appeal." *Kimberly Regenesis, LLC v. Lee Cnty.*, 64 F.4th 1253, 1261 (11th Cir. 2023). But we have been clear that if such an exception

exists, the nonparty at a minimum "must have at least participated in the district court." *Id.* at 1262. A nonparty "who did not participate [cannot] appeal." *Finn*, 111 F.4th at 1318.

Two recent cases help give us a picture of what "counts" as participation. First, in *Kimberly Regenesis*, the plaintiffs sought to depose county commissioners, who were not parties to the action. 64 F.4th at 1257. The county moved for a protective order based on quasi-judicial immunity, but the commissioners filed no motion and made no appearance before either the magistrate judge or the district court. *Id.* at 1257–58. Instead, the commissioners' first appearance in the case was to appeal the district court's adoption of the magistrate's order denying immunity. *Id.* at 1258. Under those facts, we dismissed the appeal for lack of appellate standing because (1) the county was not injured by the order because quasi-judicial immunity belonged to the individual commissioners, and (2) the non-party commissioners had not participated in the proceedings before the district court. *Id.* at 1259, 1262. In so holding, we concluded that "the county's assertion of the immunity [did not] equate to the commissioner's participation in the case." *Id.* at 1264.

Then, in *Finn*, we ruled that a school district lacked standing to appeal a preliminary injunction of a redistricting map. 111 F.4th at 1316–20. There, the school district had intervened as a party-defendant in the case but was later dismissed after successfully obtaining a judgment on the pleadings regarding its liability. *Id.* at 1314. Meanwhile, the litigation between the plaintiffs and the

other defendants continued. *Id.* at 1315. At the subsequent preliminary injunction stage, the school district sought, and obtained leave to oppose, the plaintiff's motion for a preliminary injunction as amicus. *Id.* But when the school district sought to appeal the grant of the preliminary injunction, we held they lacked standing because, even assuming that there is an exception for non-party appeals based on participation, the school district, despite being a party previously, had not participated as a party or an intervenor in the relevant preliminary injunction proceedings. *Id.* at 1317–20. We held that participation as an amicus "[did] not qualify as participation for nonparty appellate standing." *Id.* at 1319.

Turning then to the facts here, it is clear that under our prior precedent neither the Board nor the Board's members have standing to appeal.

Beginning with the Board, the Board argues that "because [it] raised the legislative privilege on behalf of the Board members, the Board itself has standing just as the Board members do." This argument is squarely foreclosed by *Kimberly Regenesis*. Like the Board in this case, the commissioner in *Kimberly Regenesis* attempted to argue that he had standing to appeal because "the county asserted his immunity on his behalf." 64 F.4th at 1264. We rejected this assertion, holding that "it wasn't the county's immunity to assert" and that because the county did not possess the privilege at issue, it lacked standing to appeal the denial of the protective motion because it had not been adversely affected by the

judgment. *Id.* at 1259–60, 1264. Just so here. As in *Kimberly Regenesis*, the legislative immunity the Board asserted belongs to the individual members, not the Board itself. *See id.* at 1259 ("[O]fficial immunities . . . belong to the official, not the county."); *Hubbard*, 803 F.3d at 1309 ("[Legislators] each unquestionably hold their own legislative privilege."). Accordingly, the Board lacks standing to assert the legislative privilege of its members, who each individually possess the privilege insofar as they are entitled to it.[3]

Second, the Board members did not participate in the proceedings below, so they also lack standing. Just like the county in *Kimberly Regenesis*, in this case the Board filed a renewed motion for a protective order, asserting its intention to bring the motion on behalf of its members. The Board members made no motions or appearances themselves and did not participate in any other way in the proceedings on the motion. The Board did attach a declaration from each Board member stating that "to the extent the legislative privilege is applicable to me and may be invoked by me, I confirm my intent to assert the legislative privilege here." But these declarations are substantially less participation than the

---

[3] The Board also appears to argue that *Kimberly Regenesis* is distinguishable because it resolved an issue of quasi-judicial, instead of legislative, immunity. The Board cites no law to explain why this is anything more than a distinction without a difference. Both *Hubbard* (on which the Board relies) and *Kimberly Regenesis* discussed government privileges generally and referenced executive and legislative privileges interchangeably when assessing appellate jurisdiction. *See Hubbard*, 803 F.3d at 1305–07; *Kimberly Regenesis*, 64 F.4th at 1259–60.

school district in *Finn*, which obtained leave to oppose the actual motion at issue as amicus, and nonetheless was held to have not participated for purposes of appellate standing. *See Finn*, 111 F.4th at 1316–20. The Board members did not appear, brief, argue, or in any other way participate in the proceedings below. Therefore, they also lack appellate standing.

All of the Board's remaining arguments to the contrary are meritless. The Board argues that *Hubbard* controls here because that case conclusively established that discovery orders denying a governmental privilege are immediately appealable. But in *Hubbard*, we did not address the issue of appellate standing because the individual lawmakers themselves appeared and moved to quash the subpoenas. *See* 803 F.3d at 1305–06. Thus, far from being contrary to our ruling here, *Hubbard* supports exactly what we have stated: a party who appears and participates or intervenes in a proceeding may have appellate standing to appeal a discovery order denying a governmental privilege. *Id.*

The Board also argues Plaintiffs are barred from arguing we lack appellate jurisdiction because they accepted the Board's standing to move for a protective order in the proceedings below. But this argument fundamentally misunderstands our constitutional obligation to independently ensure our own subject matter jurisdiction exists, for absent such jurisdiction, we lack constitutional authority to proceed. *See Amerisure Ins. Co. v. Auchter Co.*, 94 F.4th 1307, 1310 (11th Cir. 2024) ("[W]e also have an independent obligation to determine whether appellate

jurisdiction exists in each case, regardless of whether the parties raised that issue."). We have therefore held that a party's "earlier position [in the litigation] cannot be taken as a waiver and bar to his position on appeal because arguments regarding subject matter jurisdiction cannot be waived." *First Union Nat'l Bank of Fla. v. Hall*, 123 F.3d 1374, 1378 n.7 (11th Cir. 1997).

In summary, because the legislative privilege asserted belongs to the Board members not the Board, and the Board members did not participate in the litigation below, we lack appellate jurisdiction to review this appeal and must dismiss.

## IV.    Conclusion

We lack jurisdiction to hear this interlocutory appeal. It is therefore dismissed.

**DISMISSED.**